UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YISROEL WEINGOT and SURI WEINBERGER a/k/a SURI WEINGOT,<br><br>Plaintiffs,<br><br>-against-<br><br>UNISON AGREEMENT CORP., REAL ESTATE EQUITY EXCHANGE INC., and ODIN NEW HORIZON REAL ESTATE FUND LP,<br><br>Defendants. | 21-cv-04542 (JS-AYS)<br><br>**AMENDED COMPLAINT**<br><br>Plaintiffs demand trial by jury |

Plaintiffs Yisroel Weingot and Suri Weingot, by their attorneys of record for their Amended Complaint against Defendants Unison Agreement Corp., Real Estate Equity Exchange Inc., and Odin New Horizon Real Estate Fund LP alleges as follows:

## THE PARTIES

1. Yisroel Weingot ("Yisroel") and Suri Weinberger a/k/a/ Suri Weingot ("Suri") (Yisroel and Suri are collectively referred to as "Plaintiffs" or "Weingots") are natural persons with an address at 973 Benton Street, Woodmere, New York 11598.

2. Yisroel and Suri are husband and wife and were and are at all relevant times the owners as husband and wife, in fee simple of certain premises in the Town of Hempstead, County of Nassau, State of New York, being more particularly described as 973 Benton Street, Woodmere, New York 11598 Section: 41; Block: 027; Lot: 12 (the "Property").

3. Upon information and belief, at all relevant times Defendant Unison Agreement Corp. ("Unison") is a Delaware corporation with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108.

4. Upon information and belief, at all relevant times Defendant Real Estate Equity

Exchange Inc. ("Equity Exchange") is a Delaware corporation with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108. Upon information and belief Equity Exchange is the corporate parent of Unison.

5. Upon information and belief, at all relevant times Defendant Odin New Horizon Real Estate Fund LP ("Odin") is a Delaware limited partnership with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, as well as pursuant to 28 U.S.C. § 1331 because of the federal question presented herein.

7. This Court has ancillary or supplementary jurisdiction over the related state law claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in Nassau County, New York, which is located within the venue of the Eastern District of New York, Long Island Annex.

## BACKGROUND

9. Defendant Unison was founded in 2004, and is a national company headquartered in San Francisco, California.

10. At all relevant times Defendants and their agents/affiliates and alter egos created and have maintained a website utilizing the domain name unison.com ("Website").

11. The content of the Website is set to inform a potential participant in the Unison program with what appears to be factual statements relating to the Unison "co-investment" model and is

designed so that an uninformed person reviewing the site would believe the published statements to be fact as they are published on the Website.

12. Unison is grossly irresponsible in the publication of the content on its own Website. The content is not only misleading, but patently false and set forth on the site with reckless disregard for the truth.

13. Upon information and belief, Defendants are utilizing the Website as a springboard to contact individuals, to induce them to do business with Unison.

14. Unison through its Website, touts itself as an entity that offers an alternative to home loans with something they call "home co-investing."

15. Unison claims to provide a program in which it provides homeowners with an upfront cash payment in exchange for a share of the change in value when the home is sold.

16. Specifically, the Website claims that "We convert up to 17.5% of your home's value to cash, so you can live the life you really want. Unlike a loan, there is no added debt, monthly payments, or interest. We share in a portion of your home's change in value when you decide to sell." That statement is materially false.

17. In reality, as will be demonstrated below, to the detriment of its customers, Unison's "share" upon sale is a majority of the home's entire value not just "a portion of your home's change in value".

18. Unison falsely claims that they are not giving the homeowner a loan, but rather purchasing a percentage of the change in value of their home. That statement is materially false.

19. Unison also falsely claims that the homeowners have the ability to buyout at any time without penalty. That statement is materially false.

20. In reality, as will be demonstrated below, upon an attempted early termination, Unison

guarantees itself at least the repayment of the upfront payment, *i.e.* the "cash" it paid to the homeowner in exchange for its purported share in the home's changed value, which in reality is a majority of the home's entire value. Thus, the upfront cash payment functions as a loan.

21. Unison describes itself as a co-investor in the homeowner's property for a share in the change of the value of that property. However, this program is actually both a high-interest loan and an acquisition of a majority of the homeowner's equity.

22. The pricing of Unison's acquisition of its ownership interest in a homeowner's property is based upon the property's purported value as determined in Unison's sole discretion and upon an appraisal requisitioned by Unison. Unison has a financial incentive to lowball the appraisal, and in Plaintiffs' case, did just that by using an appraisal that was approximately 10-15% undervalued. That undervalued appraisal had a substantial effect upon Plaintiffs.

23. By falsely claiming to offer certain advantages over conventional borrowing Unison preys on the vulnerabilities of low-income borrowers.

24. Unison typically targets a homeowner trying to get out of debt, to whom the avoidance of monthly principal and interest payments are particularly palatable.

25. Most glaring is Unison's failure to disclose that the participants in Unison programs relinquish substantial equity in their home's value, and that Unison intentionally understates and/or ignores the home's true value.

26. Unison preys upon the elderly and the unsophisticated homeowner by entrapping them into their schemes. The homeowner unknowingly relinquishes any future benefit of home ownership. Unison on the Website presents their model as a "co-investment" with the homeowner. However, Unison does not share in any of the expenses of the property yet takes a majority of the value upon a sale. Plaintiffs are forced to continue to pay all of the expenses

associated with the Property but if they sell or seek to buy out Unison's interest, they will get no credit for those payments and will lose a majority of the equity they had built up to Defendants.

27. Based on Defendants' deceptive conduct and unfulfilled promises, Plaintiffs bring claims for, *inter alia*, fraud, unconscionable contract, unjust enrichment, violations of New York's General Business Law §§ 349, 350, Truth in Lending Act and Article 12-D of the New York Banking Law, and unjust enrichment, seeking damages in excess of $1 Million, recission, punitive damages, and injunctive relief.

**ALLEGATIONS RELATING TO ALL COUNTS**

28. The Weingots, have owned the Property in which they reside with their six children since 2008, from that time until today's date, they have continued to live with their family at the Property which is their primary residence.

29. Plaintiffs are teachers and would not be considered educated investors, or sophisticated in real estate and/or mortgage lending.

30. In October of 2017, in need of a financial loan, Yisroel looked into different options that were available to utilize the equity in Plaintiffs' home.

31. The Property is Plaintiffs' only real estate holding and is the major portion of their net worth.

32. Yisroel during the course of researching his options found Unison's website.

33. Yisroel was never informed that the home's value could easily exceed the amount he might have paid in interest through a traditional home equity loan and that it would be prohibitively expensive to buy out Unison's interest a short time after entering into the agreement.

34. Yisroel was never informed that the appraisal was biased in favor of Defendants and that

the valuation was grossly undervalued and false.

35. Unison took advantage of Plaintiffs' financial situation by offering Plaintiffs a minimal payment to effectively acquire a majority of the ownership interest in Plaintiffs' home.

36. Unison's deception and its failure to provide accurate information about what it referred to as a co-investment caused and continues to cause Plaintiffs multiple forms of significant harm.

37. After reviewing the information on the Website, including, but not limited to, the statement, "We share in a portion of your home's change in value when you decide to sell," on or about October 31, 2017, Yisroel contacted Eric Reou, ("Eric") a Senior Program Specialist for Unison to inquire whether Unison's programs could meet his needs. Yisroel was told that Unison's programs were appropriate for his needs.

38. Eric also stated to Yisroel that Unison would share in a portion of your home's change in value when you decide to sell.

39. Plaintiffs believed Eric, and the information that he and Unison provided to Plaintiffs. Yisroel requested an application and other material to commence the process whereby Plaintiffs would receive funds from Unison.

40. Subsequently, in or about November 2017, Plaintiffs received an application package from Unison. After months of leading the Plaintiff on, Unison sent a subpar and below market appraisal and created a pressured environment that made it impossible for an uneducated homeowner to make an informed decision. The appraisal valued the Property at $668,000, a value that was at least 5-15% too low.

41. The low appraisal allowed Unison to underpay Plaintiffs because the cash paid to Unison's customer is calculated as a percentage of that appraised value.

42. In or about January, 2018, Plaintiffs were presented with several agreements and were

told to sign them. Those agreements include a “Unison Homeowner Option Agreement”, a “Unison Homeowner Covenant Agreement” and a “Unison Homeowner Mortgage and Security Agreement” totaling approximately 65 single spaced pages of legalese and using terminology that is indecipherable to average laymen, such as the Weingots.

43. A Unison representative came to the Weingots’ home with eh agreements and when asked various questions about the documents stated that he was unable to answer the Weingots’ questions.

44. The Unison Homeowner Option Agreement states that Plaintiffs hereby grant to Unison “an option to purchase, in the future, an undivided 68.6% interest in and to that certain residential real property known as 973 Benton Street, Woodmere, New York.” That agreement gave Defendants the right to an interest in the entire value of the Property, not just the change in value from the date of the original “investment”.

45. In other words, the Weingots were given an agreement to sign that materially contradicted the statements on the Website.

46. The Property was appraised by Defendants at a value of $668,000. In return for an option to purchase 68.6% of the Property’s future value, Unison set the “Purchase Price” at $459,985.00. Unison paid Plaintiffs $115,000.00 which they term as the “Unison Investment Payment” as an advance against the Unison Purchase Price.

47. According to the various agreements Plaintiffs were required to sign, upon a sale of the Property, Defendants would receive 68.6% of the sale price. Given that the already existing first mortgage would have to be paid first, Plaintiffs are unlikely to receive the Unison Purchase Price Balance that they are owed, namely the Purchase Price minus the Unison Investment Payment.

48. The agreements also provide for a termination by the Weingots after three years that is

called a Special Termination. The procedure for a Special Termination in essence requires the same calculations as for a sale but a new appraisal of the Property takes the place of the sales price in the calculations. However, in order to protect their "investment" Defendants guaranteed themselves at least a return of the Unison Investment Payment because the provisions for a Special Termination grant Defendants the greater of either the calculations described above or the Unison Investment Payment. Thus, the Unison Investment Payment is not really an "investment" at all.

49. The Unison Investment Payment is misrepresented as an investment. It effectually functions as a loan because its repayment is guaranteed.

50. Additionally, when Yisroel inquired about the possibility of buying out Unison's interest, he was told that he would have to pay back the Unison Investment Payment as part of the price Plaintiffs would have to pay.

51. The Mortgage and Security Agreement confirms this status by creating a lien on the Property in the amount of $115,000.00 in favor of Unison. This is despite the claims in the various agreements and on the Website that the Unison Investment Payment is not a loan, and that Plaintiffs would not be required to repay it. Those statements are materially false because repayment of the Unison Investment Payment is guaranteed to Defendants as the minimum amount to be paid in the event of a Special Termination, and was specifically told to Yisroel that he would have to repay that money.

52. Plaintiffs relied on Unison's assurances and promises that they were providing Plaintiffs with an infusion of cash based on their home equity and the transaction was in the Plaintiffs' best interest.

53. Upon information and belief, despite all these express assurances and promises, Unison

had no intention to meet Plaintiffs' financial need, and Unison knew or should have known that it was not providing Plaintiffs what it informed them it was providing.

54. Upon information and belief, Unison's representations to Plaintiffs regarding the purported co-investment were purposely false and misleading and designed to ensure that Plaintiffs would convey a disproportionate percentage of their ownership interest in the Property to Unison.

55. Plaintiffs did indeed rely on this information from Unison and Unison knew or should have known that Plaintiffs would reasonably rely on this information in making its determinations to participate in Unison's HomeOwners program.

56. Unison misrepresented to Plaintiffs material aspects of Unison's HomeOwners program, namely that Unison would only share in the change in value of the Property and that the Unison Investment Payment was not a loan.

57. Unison knew these omissions and misrepresentations to be false at the time it made them.

58. Unison made the misrepresentations and omitted information to induce Plaintiffs into agreeing to enter into Unison's HomeOwners program.

59. Unison knew or should have known that Plaintiffs would reasonably rely on its false or misleading information in this matter.

60. Unison knew or should have known that Plaintiffs would reasonably rely on this information in making its determinations to participate in Unison's HomeOwner program.

**AS AND FOR A FIRST CAUSE ACTION**
**(Common Law Fraud)**

61. Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs above as if fully set forth herein.

62. Defendants participated in a massive fraud by identifying and targeting Plaintiffs to

induce them to transfer a substantial ownership interest from Plaintiffs to Defendants. Defendants furthered the fraud by providing false and misleading information on the Website that was intended to create the impression that the subject transaction was fair and in Plaintiff's best interests.

63. Defendants acted with the intent that Plaintiffs rely on its false representations and with full knowledge that Plaintiffs would rely on its false representations, in order to induce Plaintiff to agree to transfer a substantial ownership interest to Defendants.

64. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that Defendants failed to disclose such facts such as the undervaluation of the Property, the actual interest conveyed to Defendants being the entire value of the Property and not just an interest in the change in value, and the mischaracterization of the transaction as an investment when it really functions as a loan.

65. Such material misrepresentations and/or omissions were done knowingly or recklessly, with reckless indifference to the truth, and for the purpose and effect of concealing the true nature of the deal and the extent of Defendants' self-dealing and fraud; and with the intent to induce Plaintiffs to rely upon them and transfer a majority ownership interest to Defendants.

66. Plaintiffs acted in direct reliance on the representations and omissions made by Defendants.

67. Plaintiffs justifiably relied upon the false and misleading representations and omissions made by Defendants. At the time of said misrepresentations and/or omissions, Plaintiffs were ignorant of their falsity and believed them to be true. Had Plaintiffs known the truth regarding the actual circumstances of the subject transaction as well as Defendants' fraud Plaintiffs would not have transferred an ownership interest to Defendants, and would have taken the appropriate

steps to protect its investment.

68. Furthermore, Plaintiffs' reliance on Defendants' reputation was reasonable. Unison touts its reputation as reputable with the highest standards on the Website. Moreover, Plaintiffs had no reason to suspect that Unison's representations were false.

69. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages in that, in reliance on Defendants false and misleading statements, Plaintiffs' transferred a substantial ownership interest of their property to Defendants. Plaintiffs have been damaged in an amount to be proven at trial but believed to be in excess of $1 Million.

**AS AND FOR A SECOND CAUSE ACTION**
**(Common Law Fraud)**

70. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

71. Defendants' presented Plaintiffs with a below market and inadequate appraisal of the Property. The below market and inadequate appraisal was the basis of the Unison Investment Payment.

72. Because the appraisal was below market and inadequate, the Unison Investment Payment was too low and the calculations of the amounts to be received by Defendants upon a sale of the Property or a Special Termination will artificially inflate the amount Defendants are to receive.

73. As a direct and proximate cause of Defendants' material omissions and material misrepresentations in and regarding the appraisal, Plaintiffs have suffered damages in an amount to be proven at trial but believed to be in excess of $1 Million.

**AS AND FOR A THIRD CAUSE ACTION**
**(Fraudulent Misrepresentation)**

74. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully

set forth herein at length.

75. Defendants knowingly and intentionally concealed material information from Plaintiffs, which is required by Federal Statutes and Regulations to be disclosed to Plaintiffs both before and at the closing.

76. Perhaps the strongest evidence of Defendants' fraudulent misrepresentation is that Defendants misrepresented material information to Plaintiffs namely the true nature of the transaction; with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

77. In furtherance of Defendants' fraudulent scheme Union's Website is replete with myriad misrepresentations and misleading information that fails to disclose the fact that Plaintiffs assigned a significant ownership interest in the Property.

78. In addition, Defendants' failed to disclose the fact that the appraisal that was used to value Plaintiffs' residence was undervalued and upon information and belief based on subjective information.

79. Under the circumstances, the material omissions and material misrepresentations of Defendants were malicious.

80. Plaintiffs intended to rely, and justifiably relied, upon the false representations made by Defendants by transferring a substantial ownership interest in the Property to Defendants.

81. Plaintiffs, not being educated investors reasonably relied upon the representations of Defendants in agreeing to execute the Unison agreements.

82. As a direct and proximate cause of Defendants' material omissions and material misrepresentations, Plaintiffs have suffered damages.

83. As a result of its reliance upon the false representations made by Defendants, Plaintiffs

have suffered damages, namely the loss of a substantial ownership interest in the Property. Defendants' misstatements and related misconduct were the direct and proximate cause of Plaintiff's losses, and Plaintiffs have suffered damages to be proven at trial, but believed to be in excess of $1 Million.

**AS AND FOR A FOURTH CAUSE ACTION**
**(Quiet Title)**

84. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

85. The property that is the subject of this action is located at 973 Benton Street, Woodmere, New York 11598.

86. Plaintiffs were at all times herein mentioned the owner and/or entitled to possession of the Property.

87. Defendant Unison claims an interest in the Property adverse to Plaintiffs herein.

88. However, the claim of Defendant Unison is without any right whatsoever, and Unison has no legal or equitable right, claim, or interest in the Property.

89. Plaintiffs therefore seeks a declaration that the title to the Property is vested in Plaintiffs alone and that Defendant Unison be declared to have no estate, right, title or interest in the subject property and that Unison be forever enjoined from asserting any estate, right, title or interest in the Property adverse to Plaintiffs.

**AS AND FOR A FIFTH CAUSE ACTION**
**(Unjust Enrichment)**

90. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

91. As set forth above, Plaintiffs entered into various agreements with Defendants with the

understanding that they would receive a cash payment from Defendants in exchange for a portion of any change in value in the Property when the Property is sold.

92. Defendants have been unjustly enriched at the expense of Plaintiffs by actually acquiring a majority of the value and of Plaintiffs' equity on the Property.

93. It would be unjust for Defendants be able to retain the benefit of such enrichment to Plaintiffs' detriment.

94. As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial, but believed to be in excess of $1 million.

**AS AND FOR A SIXTH CAUSE ACTION**
**(Violations of the Truth in Lending Act, 15 U.S.C § 1601 et seq. and)**
**(Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1)**

95. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

96. Unison violated the Truth in Lending Act, 15 U.S.C § 1601 et seq. ("TILA") by allowing Plaintiffs to effectively enter into a loan agreement which was wholly unsuitable for them.

97. The transaction that is the subject matter of this Complaint, although not termed a loan, was and is a consumer-credit transaction within the meaning of TILA.

98. Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the statute which was to fully inform home buyers of the pros and cons of a credit transaction in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar products with other lenders. It also requires Defendants to offer other loan products that might be more advantageous for Plaintiffs under the same qualifying matrix.

99. Unison effectively extended or offered credit making Defendants a creditor under 15

U.S.C. § 1602 (f) and regulation Z 12 C.F.R. § 226.2 (a) (17).

100. Plaintiffs executed a Security Agreement and a Mortgage which are consumer credit transactions within the meaning of 15 U.S.C. § 1601 and regulation Z, 12 C.F.R. § 226.

101. That transaction is governed by the Truth in Lending Act, 15 U.S.C § 1601 and regulation Z, 12 C.F.R. § 226.

102. Defendants failed to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C § 1638 (b) and regulation Z Section 226.17 (a).

103. Defendants failed to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632 (a) and regulation Z § 226.17 (a).

104. Defendants failed to include as finance charges certain charges imposed by Defendants payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. § 1605 and regulation Z § 226.4, thus improperly disclosing finance charges in violation of 15 U.S.C § 1638 (a) and regulation Z § 226.18 (d).

105. Defendants improperly represented a loan as an investment in violation of 15 U.S.C. § 1638 (a) (2) and regulation Z § 226.18 (b).

106. As a further direct and proximate result of Defendants' conduct Plaintiffs lost substantial equity in their home.

107. As a direct and proximate result of Defendants' conduct, Plaintiffs are permanently burdened by the fraudulent and unlawful agreement made by Defendants.

108. By reason for the foregoing violations of the act and regulation Z, Defendants are liable to Plaintiffs for actual damages to be established at trial along with attorney's fees and costs in accordance with 15 U.S.C. § 1640.

**AS AND FOR A SEVENTH CAUSE ACTION**
**(Violations of New York Banking Law Article 12-D)**

109. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

110. Unison violated New York Banking Law Article 12-D, by acting as a mortgage banker without a proper license.

111. Defendants acted as a mortgage banker by effectively lending $115,000.00 to Plaintiffs and taking a Mortgage and Security interest in the Property.

112. Defendants have made a mortgage loan secured by the Mortgage and Security Agreement without a proper license.

113. Based on the aforementioned violations, Plaintiffs are entitled to recoup all payments made or required to be paid under the terms of the loan transaction and are entitled to statutory damages, in the amount of payments made or required to be made and damages, actual damages to be established at trial along with attorney's fees and costs.

**AS AND FOR AN EIGHTH CAUSE ACTION**
**(Deceptive Acts Pursuant to NY GBL § 349)**

114. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

115. NY GBL § 349 declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this State." GBL § 349(g) provides that § 349 "shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this State."

116. GBL § 349(h) provides a private right of action to any person injured by reason of violation of that Section and authorized the court to award reasonable attorney's fees to the

prevailing plaintiff. In relevant part, it provides:

> any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

117. Defendants, by their acts and conduct alleged and described herein, have committed a violation of GBL § 349(a).

118. As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial, but believed to be in excess of $1 million.

**AS AND FOR A NINTH CAUSE ACTION**
**(False Advertising Pursuant to NY GBL § 350)**

119. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

120. NY GBL § 350 states, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any services in this State is hereby declared unlawful.

121. Defendant violated New York General Business Law § 350 because it engaged in false advertising in the conduct of a business, trade, or commerce in this state.

122. Defendant's acts were consumer oriented and triggered reliance by consumers.

123. Defendant's acts and/or practices are "deceptive or misleading in a material way" and include but are not limited to, the false statements on the Website that Unison would only share a portion of the change in value in the Property but in actuality acquired a majority interest in the entire value of the Property.

124. Defendants' acts and/or practices caused actual harm to Plaintiffs.

125. Plaintiffs have been injured as a result of Defendants' acts and/or practices.

126. Plaintiffs have been injured by reason of Defendants' violation of GBL § 350.

127. As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial, but believed to be in excess of $1 million.

**AS AND FOR A TENTH CAUSE ACTION**
**(Unconscionable Contract)**

128. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

129. The actions of Defendants as set forth herein, resulted in Plaintiffs being forced, tricked, and misled into giving away the majority of the equity in their home.

130. Defendants used the fact that the Plaintiffs were unsophisticated homeowners and that Plaintiffs desperately needed money to convince Plaintiffs that this was a fair and reasonable transaction.

131. Defendants did not suggest that the Plaintiffs retain any outside counsel or guidance and waited until the end of a months' long process to provide a below market appraisal of the value of the home.

132. Defendants intended to exploit Plaintiffs' special disadvantage and deny Plaintiffs rights to the Property.

133. Defendants, intentionally misrepresented to Plaintiffs that Defendants were entitled to a percentage of Plaintiffs' ownership interest. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

134. Defendants' failure to disclose the material terms of the transaction induced Plaintiffs to enter into the transaction as alleged herein.

135. Because of the unconscionable nature of the transaction, the Court should void all agreements between Plaintiffs and Defendants.

**AS AND FOR AN ELEVENTH CAUSE ACTION**
**(Rescission)**

136. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

137. An actual controversy now exists between Plaintiffs, who contend they have the right to rescind the transaction relating to the subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

138. Money damages will not be sufficient to cure the stain on Plaintiffs' title to the Property and make Plaintiffs whole. Rescinding the agreements will actually be effective in putting each party back into roughly the same position they were in before the agreements were signed.

139. Plaintiffs have brought this action promptly after learning the truth about the transaction and the agreements they signed.

140. Therefore, Plaintiffs are entitled to rescind the Unison Homeowner Option Agreement, Unison Homeowner Covenant Agreement, and Unison Homeowner Mortgage and Security Agreement.

**AS AND FOR A TWELFTH CAUSE ACTION**
**(Slander of Title)**

141. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

142. Defendants disparaged Plaintiffs exclusive valid right to title by through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Mortgage and Security Agreement, and other documents evidencing

ownership of the Property by a party who does not possess that right.

143. Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property. By posting, publishing, and recording the documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

144. The claim of Defendants constitute a cloud on Plaintiffs' title to the property.

145. Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

146. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property has been disparaged and slandered, and there is a cloud on Plaintiffs' title, and Plaintiffs have suffered, and continue to suffer, damages in an amount to be proven at trial but believed to be in excess of $1 Million.

147. As a further proximate result of Defendants' conduct, Plaintiffs have incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

148. At the time that the false and disparaging documents were created and published by Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title, and interest in

the Property, and to obtain the Property for Defendants' own use by unlawful means.

149. The conduct of Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

150. Plaintiffs request the court award damages to be determined at trial but believed to be in excess of $1 Million plus the cost of this action, and such other relief as the court may deem proper.

**AS AND FOR A THIRTEENTH CAUSE ACTION**
**(Quiet Title)**

151. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

152. Defendants claim an interest and estate in the Property adverse to Plaintiffs in that Defendants assert they are the owner of over 68% of the Property.

153. The claims of Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Property, or any part of the Real Property.

154. Defendants claim some estate, right, title, lien or interest in or to the Property adverse to Plaintiffs' title, and these claims constitute a cloud on Plaintiffs' title to the Property.

155. Plaintiffs, therefore, allege upon information and belief, that Defendants do not hold a perfected and secured claim in the Property; and are estopped and precluded from asserting a claim against the Property.

156. Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights,

obligations and interests with regard to the Property.

157. Plaintiffs request that all adverse claims to the Property be determined by a decree of this Court.

158. Plaintiffs request the decree declare and adjudge that Plaintiffs are entitled to the exclusive possession of the property.

159. Plaintiffs request the decree declare and adjudge that Plaintiffs own in fee simple, and are entitled to the quiet and peaceful possession of, the Property.

160. Plaintiffs request the decree declare and adjudge that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the Property.

161. Plaintiffs request the decree permanently enjoin Defendants, and all persons claiming under them, from asserting any adverse claim to Plaintiffs' title to the Property; and Plaintiffs request the court award Plaintiffs' costs of this action, and such other relief as the Court may deem proper.

**AS AND FOR A FOURTEENTH CAUSE ACTION**
**(Declaratory Relief )**

162. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

163. The Mortgage and Security Agreement should be deemed illegal and violative of New York Law and against public policy.

164. Defendants purposely set in place a system that failed to disseminate accurate information to ensure that Plaintiffs and other consumers would enter into a transaction that would unlawfully transfer their ownership interest in their residence to Defendants.

165. Defendants' actions have caused Plaintiffs and numerous other consumers to

unknowingly transfer a substantial percentage of their ownership interest in their homes to Defendants.

166. Upon information and belief Defendants' actions are not isolated incidents and instead reflect a pervasive pattern of practice.

167. Plaintiffs' experiences of this case reveals that, Defendants' flagrant disregard for New York Law and public policy apparently persists. It is well past the time for such practices to end.

168. Defendants' misconduct is so egregious that a declaratory judgment must be granted declaring the subject transaction, especially the Mortgage and Security Agreement, against them void.

169. An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove regarding Plaintiffs' respective rights and duties in the Property. Plaintiffs request a judicial determination of the rights, obligations and interest of the parties regarding the subject property, and such determination is necessary and appropriate under the circumstances so that all parties may ascertain and know their rights, obligations and interests regarding the subject property.

170. Plaintiffs are the equitable owners of the Property.

171. Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

172. Plaintiffs seek a judicial declaration that the title to the Property is vested in Plaintiffs alone and that the Defendants be declared to have no interest estate, right, title or interest in the Property and that the Defendants, their agents and assigns, be forever enjoined from asserting

any estate, right title or interest in the Property subject to Plaintiffs' rights, and declaring the subject transaction especially the Mortgage and Security Agreement against them void.

**AS AND FOR A FIFTEENTH CAUSE ACTION**
**(For Injunctive Relief)**

173. Plaintiffs repeat and re-allege each and every allegation contained hereinabove as if fully set forth herein at length.

174. Plaintiffs are the record title holder of the Property and are now being threatened with irreparable injury by the conduct of Defendants.

175. Plaintiffs will continue to be in jeopardy of injury by Defendants' wrongful conduct by the coloring their title, causing irreparable injury by denying them the right to assert their ownership rights.

176. Plaintiffs have no adequate remedy at law for both the factual and threatened injuries herein described. Plaintiffs' real property residence and rights involved are non-fungible and utterly unique so that it will be impossible to accurately measure in monetary terms, the damage caused by Defendants' wrongful conduct.

177. Plaintiffs have no other plain, speedy or adequate remedy and injunctive relief is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage it will suffer.

178. Defendants' numerous violations of federal and state statutes and inability to establish a claim of right to an ownership interest in the Property establishes Plaintiffs' claim as more probable than not, and Plaintiffs will likely prevail at the time of trial.

179. Plaintiffs request the decree permanently enjoin Defendants, and all persons claiming

under them, from asserting any adverse claim to Plaintiffs' title to the Property.

WHEREFORE Plaintiffs demand judgment:

(i) For Compensatory Damages in an amount to be determined at trial but believed to be no less than $1 Million;

(ii) For Special Damages in an amount to be determined at trial but believed to be no less than $1 Million;

(iii) For General Damages in an amount to be determined at trial but believed to be no less than $1 Million;

(iv) For Punitive Damages as allowed by law but in no event less than $1 Million;

(v) For Restitution as allowed by law;

(vi) Declaring that Defendants, and all persons claiming under or acting in concert with Defendants, be forever enjoined from any and all claims to an estate or other interest in the Property;

(vii) Declaring Plaintiffs as having absolute rights to the Property;

(viii) Declaring that complete title and possession of the Property is vested solely in Plaintiffs and that Plaintiffs may remain in the exclusive possession thereof;

(ix) Granting permanent injunctive relief enjoining Defendants, and all persons claiming under or acting in concert with Defendants, from interfering with Plaintiffs' title, possession, use and enjoyment of the Property;

(x) Attorneys fees and costs as allowed by law; and

(xi) For such other and further relief as may be reasonable under the circumstances.

Dated: Rockville Centre, New York
August 22, 2022

Law Offices of Charles Wertman P.C.
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
(516) 284-0900
*charles@cwertmanlaw.com*

Law Offices of Elliot J. Blumenthal, PLLC
483 Chestnut Street
Cedarhurst, New York 11516
(516) 295-0903
*elliot@eblumenthallaw.com*

*Attorneys for Plaintiffs*

By: ______________________________
CHARLES WERTMAN