UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
YISROEL WEINGOT and SURI WEINBERGER a/k/a
SURI WEINGOT,

                             Plaintiffs,                        **REPORT AND**
                                                                          **RECOMMENDATION**
                -against-                                   CV 21-4542 (JS)(AYS)

UNISON AGREEMENT CORP., REAL ESTATE
EQUITY EXCHANGE INC. and ODIN NEW
HORIZON REAL ESTATE FUND, LP,

                             Defendants.
----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

        Before the Court, on referral from the Honorable Joanna Seybert, is Defendants' motion to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. For the following reasons, this Court respectfully recommends that Defendants' motion be granted in part and denied in part.

BACKGROUND

        Plaintiffs, Yisroel Weingot ("Yisroel") and Suri Weinberger, also known as Suri Weingot ("Suri") (collectively, "Plaintiffs" or "Weingots"), are husband and wife residing at 973 Benton Street in Woodmere, New York (the "Property"). (Am. Compl. ¶ 1.) The Weingots have owned and resided at the Property since 2008. (Id. ¶ 28.) The Property is Plaintiffs' only real estate holding and represents the major portion of their net worth. (Id. ¶ 31.)

        In October 2017, in need of a financial loan, Yisroel researched different options available to utilize Plaintiffs' equity in the Property. (Id. ¶ 30.) During the course of his research, Yisroel found Defendant Unison Agreement Corporation's ("Unison") website (the "Website"), which stated as follows: "We convert up to 17.5% of your home's value to cash, so you can live

1

the life you really want. Unlike a loan, there is no added debt, monthly payments, or interest. We share in a portion of your home's change in value when you decide to sell." (Id. ¶¶ 16, 32.) Upon review of the information on the Website, Yisroel contacted Eric Reou ("Reou"), a Senior Program Specialist for Unison, on October 31, 2017, to inquire whether Unison's program could meet his needs. (Id. ¶ 37.)

Reou advised Yisroel that Unison's program was appropriate for his needs. (Id. ¶ 38.) Reou further advised Yisroel that Unison would share in a portion of the Property's change in value when he decided to sell. (Id. ¶ 38.) Based upon the information provided, Yisroel requested an application and other material to commence the process by which Plaintiffs would receive funds from Unison. (Id. ¶ 39.)

In or about November 2017, Plaintiffs received an application package from Unison. (Id. ¶ 40.) Unison thereafter appraised Plaintiff's Property at $668,000.00. (Id. ¶ 41.) In January 2018, Plaintiffs were presented with the following agreements (the "Agreements") for signature: (1) a "Unison Homeowner Option Agreement"; (2) a "Unison Homeowner Covenant Agreement"; and, (3) a "Unison Homeowner Mortgage and Security Agreement." (Id. ¶ 42.) A Unison representative brought the foregoing Agreements to Plaintiffs' home but when Plaintiffs asked various questions about the documents, the representative stated that he was unable to answer their questions. (Id. ¶ 43)

Pursuant to the Unison Homeowner Option Agreement (the "Option Agreement"), Plaintiffs granted to Unison "an option to purchase, in the future, an undivided 68.6% interest" in the Property. (Id. ¶ 44.) The Option Agreement gave Unison the right to an interest in the entire value of the Property, not just the change in value from the date of the original "investment," which Plaintiffs allege contradicts the statements on the Website (Id. ¶¶ 44-45.) With the

2

appraisal set at $668,000.00, Unison set the "Purchase Price" of the Property at $459,985.00, with an option to purchase 68.6% of the Property's future value. (Id. ¶ 46.) Unison paid Plaintiffs $115,000.00 – known as the "Unison Investment Payment" – as an advance against the Purchase Price. (Id.) According to the various Agreements Plaintiffs signed, upon a sale of the Property, Unison would receive 68.6% of the sale price. (Id. ¶ 47.) The Unison Homeowner Mortgage and Security Agreement (the "Mortgage Agreement") Plaintiffs signed created a lien on the Property in the amount of $115,000.00 in favor of Unison. (Id. ¶ 51.)

The Agreements also provided for termination by Plaintiffs after three years, known as a "Special Termination." (Id. ¶ 48.) The procedure for a Special Termination requires the same calculations as for a sale but a new appraisal of the Property takes the place of the sale price in the calculations. (Id.) The Special Termination provision also grants Unison the greater of either the calculation described above or the Unison Investment Payment. (Id.) When Yisroel inquired about the possibility of buying out Unison's interest, he was advised that he would have to pay back the Unison Investment Payment as part of any buyout. (Id. ¶ 50.)

Plaintiffs commenced the within action in New York Supreme Court, Nassau County, on May 28, 2021. (Docket Entry ("DE") [1-1].) Defendants thereafter removed the action to this Court on August 12, 2021 on the basis of diversity jurisdiction. (DE [1].) On December 16, 2021, Judge Seybert referred the action to mediation; however, mediation was unsuccessful. On consent of Defendants, Plaintiffs filed an Amended Complaint herein on August 22, 2022, (DE [30]), asserting fifteen causes of action: (1) two counts of common law fraud, (Am. Compl. ¶¶ 61-73); (2) fraudulent misrepresentation, (id. ¶¶ 74-83); (3) two counts to quiet title, (id. ¶¶ 84-89, 151-61); (4) unjust enrichment, (id. ¶¶ 90-94); (5) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and Regulation Z of the Federal Reserve Board ("Regulation Z"),

3

12 C.F.R. § 226.1 (id. ¶¶ 95-108); (6) violation of the New York Banking Law, (id. ¶¶ 109-13); (7) violation of Section 349 of the New York General Business Law, (id. ¶¶ 114-18); (8) violation of Section 350 of the New York General Business Law, (id. ¶¶ 119-27); (9) unconscionable conduct, (id. ¶¶ 128-35); (10) rescission, (id. ¶¶ 136-40); (11) slander of title, (id. ¶¶ 141-50); (12) declaratory relief, (id. ¶¶ 162-72); and, (13) injunctive relief, (id. ¶¶ 173-79.) Plaintiffs seek money damages as well as a declaration that complete title and possession of the Property is vested solely in Plaintiffs to the exclusion of all others, a permanent injunction preventing Defendants from interfering with Plaintiffs' title, possession and enjoyment of the Property, and attorney's fees and costs. (Id. Wherefore Clause.)

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE [32].) Plaintiffs oppose Defendants' motion. (DE [36].) The Court now turns to the merits of the motion.

## DISCUSSION

I.     Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the Court is required to accept all of the factual allegations in the Complaint as true and to

4

draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

While the facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Applying these principles here, the Court has considered the Agreements submitted by Defendants in rendering this Report and Recommendation since such documents are referenced heavily in the Amended Complaint and are therefore rendered "integral" to the pleading.

II.     Plaintiffs' TILA, Banking Law and General Business Law Claims are Time-Barred

As stated above, Plaintiffs bring claims pursuant to TILA, the New York Banking Law,

5

and Sections 349 and 350 of the New York General Business Law. For the reasons that follow, all such claims are untimely.

Claims brought pursuant to TILA are subject to a one-year statute of limitations, commencing on "the date of the occurrence of the violation." 15 U.S.C. § 1640(e); see also Blagrove v. Deutsche Bank Nat'l Trust Co., No. 19-CV-5357, 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (noting that "a plaintiff must bring damages claims under TILA within one year from the date of the occurrence of the violation"). "It is well-settled that where a claim for damages under TILA is premised on the failure to provide material disclosures, the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement, or possibly, when defendant performs by transmitting the funds to plaintiff." Blagrove, 2021 WL 1601115, at *3 (quoting Williams v. Ocwen Loan Servicing, LLC, No. 19-CV-2187, 2020 WL 5757640, at *10 (E.D.N.Y. Sept. 27, 2020)). Where claims under TILA are time-barred, any claims based on Regulation Z – the "regulatory vehicle through which TILA is implemented" – are time-barred as well. Blagrove, 2021 WL 1601115, at *3 (citation omitted); see also Williams, 2020 WL 5757640, at *9 (dismissing a claim for violation of Regulation Z since the claim was time-barred under TILA). Similarly, claims brought pursuant to Section 598 of the New York Banking Law – which, although not specified in the Amended Complaint, appears to be the section upon which Plaintiffs base their claim – and Sections 349 and 350 of the New York General Business Law are subject to a three-year statute of limitations. See N.Y. C.P.L.R. § 214(2); see also Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 373 (S.D.N.Y. 2014) (applying a three-year statute of limitations to a claim brought pursuant to Section 598(5) of New York's Banking Law); Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015) ("Claims brought under New York General Business Law §§ 349 and 350

6

are subject to a three-year statute of limitations under N.Y. C.P.L.R. § 214(2).").

Here, Plaintiffs signed the Agreements with Unison on January 15, 2018. (Def. Ex. A-D.) Accordingly, any claim under TILA and Regulation Z needed to be commenced by January 15, 2019 and any claims pursuant to Section 598 of New York's Banking Law and Sections 349 and 350 of New York's General Business Law needed to be brought by January 15, 2021. Plaintiffs commenced this action in state court on May 28, 2021. As such, the claims set forth at the Sixth, Seventh, Eighth, and Ninth causes of action contained in the Amended Complaint are time-barred.

Plaintiffs argue that their claims are timely because on March 20, 2022, the Governor of New York issued Executive Order 202.8, which "tolled all applicable dates between March 20, 2020 and November 3, 2020." (Pl. Mem. of Law in Opp'n 14.) Plaintiffs therefore argue that they are entitled to have an additional seven and one-half months added to their statutes of limitation. (See id.)

"Courts in this Circuit are split on whether Executive Order 202.8 suspended or tolled time periods to which it applied." Loeb v. County of Suffolk, No. 22-CV-6410, 2022 WL 4163117, at *2 (E.D.N.Y. June 23, 2023) (comparing cases). As explained by the New York Appellate Division, Second Department,

> [a] toll suspends the running of the applicable period of limitations for a finite time period, and the period is excluded from the calculation of the relevant time period. Unlike a toll, a suspension does not exclude its effective duration from the calculation of the relevant time period. Rather, it simply delays expiration of the time period until the end date of the suspension.

Brash v. Richards, 149 N.Y.S.3d 560, 561 (2d Dep't 2021). The most recent case to interpret Executive Order 202.8 in this district found it to operate as a suspension rather than a toll. See Loeb, 2022 WL 4163117, at *3 ("The Court is of the opinion that Executive Order 202.8

7

suspended the time period to which it applied, and thus Plaintiff's claims were time-barred.") (emphasis in original). This Court recommends that the same analysis be applied herein, rendering Plaintiff's claims brought pursuant to TILA, Regulation Z, the New York Banking Law and the New York General Business Law untimely. See also Baker v. 40 Wall St. Holdings Corp., 161 N.Y.S.3d 723, 724-25 (N.Y. Sup. Ct. 2022) ("[T]he Governor did not toll all statutes of limitation, but only suspended them, due to the COVID-19 Pandemic, and . . . he terminated the suspension on November 3, 2020."); Cruz v. Guaba, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) ("Th[e] toll merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020. Contrary to Plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days.").

Here, the statute of limitations on Plaintiffs' TILA claim had already expired when Executive Order 202.8 was issued in March 2020. "Nothing in the Executive Order indicates that it is to be retroactively applicable and, '[b]y its terms, it cannot be read to revive already expired time limitations.'" Arnold v. Town of Camillus, No. 5:20-CV-1364, 2023 WL 2456059, at *16 (N.D.N.Y. Mar. 9, 2023) (quoting Jackson v. Wilcox, 70 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2021)) (alteration in original). Moreover, Plaintiffs had two and one-half months from the expiration of Executive Order 202.8 to the expiration of the three-year statute of limitations on their New York Banking Law and General Business Law claims. Yet, they chose not to commence this action until May 2021. With a suspension, like that set forth in Executive Order 202.8, "a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period." Baker, 161 N.Y.S.3d at 384. The limitations period on Plaintiffs' claims clearly fell outside that period.

8

Based on the foregoing, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' claims brought pursuant to TILA, Regulation Z, the New York Banking Law, and Sections 349 and 350 of the New York General Business Law as time-barred be granted.

III.   Requests for Declaratory and Injunctive Relief are Not Causes of Action

The Fourteenth and Fifteenth Causes of Action contained in the Amended Complaint assert claims for "declaratory relief" and "injunctive relief." (Am. Compl. ¶¶ 162-79.) It is black-letter law that the federal Declaratory Judgment Act "is procedural only and does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012). Accordingly, a "request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief." Performing Arts Cent. of Suffolk County v. Actor's Equity Ass'n, No. CV 20-2531, 2022 WL 16755284, at *16 (E.D.N.Y. Aug. 25, 2022) (citation omitted), adopted by, 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022). "Similarly, injunctions are remedies and may only be issued on an independent claim for relief." Goureau v. Lemonis, No. 1:20-cv-04691, 2021 WL 4847073, at *5 (S.D.N.Y. Oct. 15, 2021) (citations omitted); see also Brown v. Showtime Networks, Inc., 394 F. Supp. 3d 418, 444 (S.D.N.Y. 2019) (holding that cause of action for a permanent injunction is "not an independent claim upon which relief could be granted, since injunctions are remedies, not claims").

In light of the foregoing, this Court respectfully recommends that Plaintiffs' Fourteenth and Fifteenth causes of action for declaratory and injunctive relief be dismissed.

IV.   Unconscionability is not a Cause of Action

"Under New York law, unconscionability is an affirmative defense to the enforcement of a contract." Colonial Funding Network, Inc. v. Epazz, Inc., 252 F. Sup. 3d 274, 285 (S.D.N.Y.

9

2017) (quoting Ng. v. HSBC Mortg. Corp., No. 07 Civ. 5434, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011)). While Plaintiffs assert a claim for "Unconscionable Contract" as the Tenth Cause of Action in the Amended Complaint, "[a] cause of action for unconscionability may not be used to seek affirmative relief." Colonial Funding Network, 252 F. Supp. 3d at 285 (quoting Ng, 2011 WL 3511296, at *8) (additional citation omitted); see also Knox v. Countrywide Bank, 4 Supp. 3d 499, 513 (E.D.N.Y. 2014) (dismissing unconscionability claim on the ground that it is a "defense[] that plaintiffs attempt to convert into [an] affirmative claim[] for relief"); Fortune Limousine Serv., Inc. v. Nextel Commc'ns, 826 N.Y.S.2d 392m 396 (2d Dep't 2006) ("The third cause of action seeking affirmative relief on the ground of unconscionable contract terms must also be dismissed as [t]he doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery.").

Based on the foregoing, Plaintiffs' claim for "unconscionable contract" should be dismissed.

V.  The Fraud Claims

Plaintiffs assert three claims sounding in fraud in their Amended Complaint: two counts of common law fraud (the First and Second Causes of Action) and one count of fraudulent misrepresentation (the Third Cause of Action). (Am. Compl. ¶¶ 61-83.) Defendants seek to dismiss all three claims on the grounds that Plaintiffs have failed to plead their fraud claims with the requisite specificity set forth in Federal Rule of Civil Procedure 9(b).

To plead a claim for fraud or fraudulent misrepresentation, a plaintiff must demonstrate four elements: "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages." Rockaway Beverage, Inc. v. Wells Fargo & Co.,

10

378 F. Supp. 3d 150, 166 (E.D.N.Y. 2019) (citing Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012)). In addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the Second Circuit has repeatedly held, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107, 108 (2d Cir. 2010)).

The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citing cases). "To show motive and opportunity, a plaintiff must allege that the defendant 'benefitted in some concrete and personal way from the purported fraud.'" Goonewardena v. Forster & Garbus LLP, No. 18-CV-00029, 2019 WL 121677, at *7 (E.D.N.Y. Jan. 7, 2019)

11

(quoting ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2019)) (additional citation omitted).

Here, the Amended Complaint alleges that Unison's Website states that it will "share in a portion of your home's change in value when you decide to sell." (Am. Compl. ¶ 16.) According to Plaintiffs, the Agreements they signed contradict the statement on the Website because they state that Unison's share is actually calculated based upon the entire value of the home upon its sale and not just the change in value. (Id. ¶ 44.) Plaintiffs allege that, as a result of this contradiction, the statement on the Website is fraudulent.

The Amended Complaint further alleges that Unison's representative, Reou, spoke with Plaintiffs on or about October 31, 2017 and reiterated the same statement – that Unison would share in a portion of their home's change in value upon its sale. (Id. ¶¶ 37-38.) Finally, the Amended Complaint alleges that, in reliance on Unison's statements – both on their Website and by their representative – Plaintiffs entered into the Agreements with Unison, resulting in the transfer of a substantial ownership interest in the Property to Unison. (Id. ¶¶ 67, 69, 83.)

The Court notes Defendants' argument that while Plaintiffs have brought this action against three separate entities, the Amended Complaint only contains allegations of direct interaction with Unison. As Defendants point out, where the complaint indicates multiple defendants in an alleged fraud, it "should inform each defendant of the nature of his alleged participation in the fraud." Arroyo v. PHH Mortgage Corp., No. , 2014 WL 2048384, at *9 (E.D.N.Y. May 19, 2014) (quoting DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)). The Amended Complaint fails to satisfy this standard.

Based on the foregoing, this Court finds that Plaintiffs have adequately pled their fraud claims in accordance with both New York State law and Rule 9(b), solely with respect to

12

Defendant Unison. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss the fraud claims be denied with respect to Unison and granted with respect to all other Defendants.

VI. <u>The Title Claims</u>

The Amended Complaint asserts two claims to quiet title (the Fourth and Thirteenth Causes of Action) and one claim for slander of title (the Twelfth Cause of Action). This Court recommends that only the slander of title claim be dismissed.

A. <u>Quiet Title</u>

Although originally a common law cause of action, the New York Real Property Actions and Proceedings Law ("RPAPL") codified the claim to quiet title into a statutory one under Article 15 and exists "to compel the determination of any claim adverse to that of the plaintiff which the defendant makes." <u>Knox</u>, 4 F. Supp. 3d at 513 (quoting N.Y. R.P.A.P.L. § 1501(1)). Under Article 15, "the plaintiff need only plead its claim to an estate or interest in land and defendant's adverse claim; plaintiff need not plead the 'invalidity' of defendant's claim as required under common law." <u>Knox</u>, 4 F. Supp. 3d at 513 (quoting <u>W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp.</u>, 815 F.2d 188, 196 (2d Cir. 1987)). Specifically, an Article 15 claim to quiet title must include allegations concerning: "(1) the plaintiff's interest in the real property, and the particular nature of the interest; (2) that the defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of that interest; (3) whether any defendant is known or unknown, or incompetent; and (4) whether all interested parties are named." <u>Knox</u>, 4 F. Supp. 3d at 514 (citing N.Y. R.P.A.P.L. § 1515) (additional citation omitted).

The Amended Complaint in the within action sufficiently alleges all four of the foregoing

13

elements. While Defendants argue that Plaintiffs cannot maintain an action to quiet title where they voluntarily entered into an agreement to place secured obligations on the Property, "[t]he fact that plaintiff executed the mortgage which he now seeks to remove as a cloud on title does not deprive him of the right to maintain the action." Knox, 4 F. Supp. 3d at 514 (citation omitted); see also Barberan v. Nationpoint, 706 F. Supp. 2d 408, 420 (S.D.N.Y. 2010) ("However weak Defendants believe Plaintiffs' factual claims regarding the enforceability of the mortgage, the note and the assignment to be, the Court will not decide which Party's claims are stronger on a motion to dismiss.").

In making their argument, Defendants rely on a decision from the New York Appellate Division, Second Department, in which the court dismissed plaintiff's quiet title claim because the "documentary evidence conclusively established the existence of the subject mortgage" and the allegations in the complaint failed to set forth a "controversy as to whether the subject property [was] wrongfully encumbered." Zuniga v. BAC Home Loans Servicing, L.P., 47 N.Y.S.3d 374, 376 (2d Dep't 2017). However, the court in Zuniga appears to have applied either the wrong standard or the earlier one – the common law standard in which a plaintiff needed to plead the "invalidity" of defendant's claim. W. 14th St. Comm. Corp., 815 F.2d at 196. Under Article 15 of the RPAPL, no such requirement exists any longer. Even where a complaint fails to sufficiently allege that a defendant's interest "was invalidated by fraud or . . . other alleged wrongdoing, the statutory quiet-title claim does not require that plaintiffs plead anything other than that defendants have an interest." Knox, 4 F. Supp. 3d at 513. The Amended Complaint meets this standard.

Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' quiet title claims be denied.

B.  Slander of Title

To state a claim for slander of title under New York law, a plaintiff must demonstrate "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." Rutty v. Krimko, No. 17-cv-6090, 2018 WL 1582290, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting 39 Coll. Point Corp. v. Transpac Capital Corp., 810 N.Y.S.2d 520, 521 (2d Dep't 2006)) (alteration in original). "New York law also requires that [p]laintiff demonstrate that the statements are made with 'malice' or 'at least a reckless disregard for their truth or falsity.'" Rutty, 2018 WL 1582290, at *3 (quoting Gonzalez v. J.P. Morgan Chase Bank, N.A., 228 F. Supp. 3d 277, 290 (S.D.N.Y. 2017)) (additional citations omitted) (alteration in original).

Here, the Amended Complaint is wholly devoid of any allegations that Defendants acted with the requisite malicious intent or reckless disregard for the truth necessary to state a claim for slander of title. In fact, Plaintiffs fail to even address Defendants' arguments on this point in their opposition to the within motion. As such, the Amended Complaint fails to state a claim for slander of title and Defendants' motion to dismiss the claim should be granted.

VII.  Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). A claim for unjust enrichment may not be used as "a catchall cause of action to be used when others fail . . . [It] is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Patellos v. Hello Prods., LLC, 523

15

F. Supp. 3d 523, 536-37 (S.D.N.Y. 2021) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)). "Rather, it 'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" Patellos, 523 F. Supp. 3d at 537 (quoting Corsello, 18 N.Y.3d at 790) (emphasis in original).

Where unjust enrichment claims rely on a similar set of facts as the plaintiff's other claims, courts routinely dismiss the unjust enrichment claims as duplicative. See Bermudez v. Colgate-Palmolive Co., No. 1:21-cv-10988, 2023 WL 2751044, at *14 (S.D.N.Y. Mar. 31, 2023) (discussing cases). While, as Plaintiffs point out, "a plaintiff may plead unjust enrichment in the alternative, . . . where [it] is duplicative of other causes of action, it should be dismissed." Bermudez, 2023 WL 2751044, at *14 (quoting Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019)). "An unjust enrichment claim is duplicative if it 'relies on the same conduct that forms the basis of [the plaintiff's] other claims.'" Bermudez, 2023 WL 2751044, at *14 (quoting Bourbia, 374 F. Supp. 3d at 467). Here, Plaintiffs' unjust enrichment claim is premised on similar allegations as their other claims and is, therefore, duplicative. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' unjust enrichment claim be granted.

VIII.  Rescission

Plaintiffs' Eleventh Cause of Action seeks an order rescinding the Agreements signed in January 2018 on the grounds that money damages will not sufficiently "cure the stain on Plaintiffs' title to the Property and make Plaintiffs whole." (Am. Compl. ¶ 138.) Defendants seek dismissal of this claim, asserting that the claim fails as a matter of law.

"[R]escission of [a] contract [is] an 'extraordinary remedy' that is generally unavailable

under New York law." St. Francis Holdings, LLP v. MMP Capital, Inc., No. 20-CV-4636, 2022 WL 991980, at *15 (E.D.N.Y. Mar. 31, 2022) (quoting Shane Campbell Gallery, Inc. v. Frieze Events, Inc., 441 F. Supp. 3d 1, 5 (S.D.N.Y. 2020)) (additional citation omitted) (alteration in original). "In order to obtain rescission . . . the party seeking it must show that it has no adequate remedy at law." Asset Mgmt. Assoc. of N.Y., Inc. v. Emerson Telecommunication Prods. LLC, No. 08-CV-2506, 2011 WL 318100, at *4 (E.D.N.Y. Jan. 25, 2011) (quoting Rosewood Apartments Corp. v. Perpignano, 200 F. Supp. 2d 269, 272 (S.D.N.Y. 2002)) (additional citation omitted). "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears." Asst Mgmt. Assoc., 2011 WL 318100, at *4 (quoting Lewis v. City of Lockport, 276 N.Y. 336 (1937)).

To state a claim for rescission based on fraud, Plaintiffs must demonstrate "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." St. Francis Holdings, 2022 WL 991980, at *15 (quoting Allen v. WestPoint-Pepperell, Inc., 945 F. 2d 40, 44 (2d Cir. 1991)) (additional citations omitted). Since Plaintiffs have adequately pled claims sounding in fraud, as set forth above, they have also adequately pled a claim for rescission based on their claim of fraud. See Robinson v. Sanctuary Rec. Grps., Ltd., 826 F. Supp. 2d 570, 575 (S.D.N.Y. 2011) ("Rescission is used as a remedy in limited circumstances [including] fraud in the inducement of the contract . . . ."). Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' rescission claim be denied.

IX.   Leave to Replead

While Plaintiffs have not sought leave to replead their claims, the Court finds that, in any event, the right to replead should be denied. Although "it is the usual practice upon granting a

motion to dismiss to allow leave to replead," Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013), doing so here would be futile as the claims recommended for dismissal herein are time-barred, procedurally deficient, or fail as a matter of law. No amount of repleading will alter that outcome. Moreover, Plaintiffs have amended their complaint once already. Permitting them to amend again would unreasonably delay this action that has already been pending for two years and is still only at the motion to dismiss stage. Accordingly, this Court respectfully recommends that the claims recommended for dismissal herein be dismissed with prejudice.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part. Specifically, the Court recommends that Defendants' motion be granted as to the following claims and that such claims be dismissed, with prejudice: (1) the TILA, New York Banking Law and New York General Business Law claims (the Sixth, Seventh, Eighth and Ninth Causes of Action); (2) the claims for declaratory and injunctive relief (the Fourteenth and Fifteenth Causes of Action); (3) the claim for unconscionable contract (the Tenth Cause of Action); (4) the slander of title claim (the Twelfth Cause of Action); and, (5) the claim for unjust enrichment (the Fifth Cause of Action). The Court further recommends that the fraud claims set forth at the First, Second and Third Causes of Action be dismissed as pleaded against Defendants Real Estate Equity Exchange Inc. and Odin New Horizon Real Estate Fund LP. In all other respects, the Court respectfully recommends that Defendants' motion to dismiss be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court

within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated:  Central Islip, New York
          July 20, 2023

/s/     Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge