IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

YISROEL WEINGOT and
SURI WEINBERGER a/k/a SURI WEINGOT,

Plaintiffs,

-against-

UNISON AGREEMENT CORP.,
REAL ESTATE EQUITY EXCHANGE INC.,
ODIN NEW HORIZON REAL ESTATE FUND LP,
and AXIS APPRAISAL MANAGEMENT SOLUTIONS,

Defendants.

---------------------------------------------------------

Case No. 2:21-cv-04542-JS-AYS

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDED COMPLAINT**

Alexander J. Gershen (admitted pro hac vice)
Jamie D. Wells (admitted pro hac vice)
SCALE LLP
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: 415.735.5933
agershen@scalefirm.com
jamie.wells@scalefirm.com

Attorneys for Defendants Unison Agreement Corp., Real Estate Equity Exchange, Inc., and Odin New Horizon Real Estate Fund L.P.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 4

A. Unison's HomeOwner Program .......... 4

B. Plaintiffs' HomeOwner Option Agreement and Related Contracts with Unison .......... 5

C. Settlement of the Option Agreement .......... 8

PROCEDURAL BACKGROUND .......... 9

LEGAL STANDARD .......... 10

LEGAL ARGUMENT .......... 11

I. PLAINTIFFS CANNOT PROVE FRAUD .......... 11

A. Suri Cannot Establish Fraud Claims Against Unison as She Admittedly Never Spoke to Unison and Has No Knowledge of the Alleged Misrepresentations .......... 11

B. Plaintiffs Cannot Establish a Misrepresentation .......... 13

C. Appraisals Cannot Establish Fraud .......... 16

D. Plaintiffs Cannot Prove an Omission .......... 16

E. Plaintiffs Cannot Prove Knowledge, Intent, or Reasonable Reliance .......... 17

F. Plaintiffs Cannot Prove a Pecuniary Loss .......... 20

II. PLAINTIFFS CANNOT PROVE RESCISSION .......... 22

III. PLAINTIFFS CANNOT PROVE QUIET TITLE .......... 23

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Cases**

*88 Blue Corp. v. Reiss Plaza Assocs.*,
183 A.D.2d 662 (1992) ..... 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..... 11

*Bickerstaff v. Vassar Coll.*,
196 F.3d 435 (2d Cir. 1999) ..... 11

*Bogart v. Shearson Lehman Bros.*,
1995 U.S. Dist. LEXIS 1291 (S.D.N.Y. 1995) ..... 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 10, 11

*Congelados del Cibao v. 3 Kids Corp.*,
2022 U.S. Dist. LEXIS 80333 (S.D.N.Y. 2022) ..... 19

*Druck v. Macro Fund*,
290 F.App'x 441 (2d Cir. 2008) ..... 22

*E. Coast Res., LLC v. Town of Hempstead*,
707 F.Supp.2d 401 (E.D.N.Y. 2010) ..... 21

*FDIC v. Great Am. Ins. Co.*,
607 F.3d 288 (2d Cir. 2010) ..... 11

*First Nat'l State Bank v. Irving Tr. Co.*,
457 N.Y.S.2d 17 (1982) ..... 15

*Fontanez v. Sanchez*,
2021 U.S. App. LEXIS 23967 (2d Cir. 2021) ..... 23

*Foster v. Equitykey Real Est. Invs.*,
2017 WL 1862527 (N.D. Cal. 2017) ..... 16

*Goonewardena v. Forster & Garbus LLP*,
2019 U.S. Dist. LEXIS 2680 (E.D.N.Y. 2019) ..... 19

*Hi-Shear Tech. Corp. v. U.S.*,
356 F.3d 1372 (Fed. Cir. 2004) ..... 21

*Humble Oil & Ref. v. Jaybert Esso Serv. Station*,
30 A.D.2d 952 (1968) .......... 17

*Huntington Vill. Dental v. Rathbauer*,
3 N.Y.S.3d 285 (2014) .......... 23

*In re Rubin Bros. Footwear*,
119 B.R. 416 (S.D.N.Y. 1990) .......... 18

*IPE Asset Mgmt. v. Fairview Block & Supply Corp.*,
999 N.Y.S.2d 465 (2014) .......... 24

*John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Family Life Ins. Tr.*,
783 F.App'x 89 (2d Cir. 2019) .......... 23

*Kaplan v. Lippman*,
75 N.Y.2d 320 (1990) .......... 24

*Kazmark v. Wasyln*,
91 N.Y.S.3d 560 (2018) .......... 18

*Kregos v. Associated Press*,
3 F.3d 656 (2d Cir. 1993) .......... 21

*Learning Experience Sys.*, LLC v. Collins,
2023 U.S. Dist. LEXIS 159388 (E.D.N.Y. 2023) .......... 19

*LoanStreet v. Troia*,
2023 U.S. Dist. LEXIS 159539 (S.D.N.Y. 2023) .......... 17

*Loreley Fin. No. 3 v. Wells Fargo Sec.*,
13 F.4th 247 (2d Cir. 2021) .......... 11, 13, 17

*Marchand v. N.Y.S. Dept. of Env't Conservation*,
51 A.D.3d 795 (2008) .......... 24

*Martino v. Kaschak*,
617 N.Y.S.2d 529 (1994) .......... 20

*Mid-Island Hosp. v. Empire Blue Cross & Blue Shield*,
276 F.3d 123 (2d Cir. 2002) .......... 17

*Milton v. Kings Park 148 LLC*,
2019 N.Y. Misc. LEXIS 34499 (2019) .......... 23, 24

*Mktg. & Mgmt. Info., Inc. v. U.S.*,

62 Fed. Cl. 126 (2004) .......... 21

*Mucci v. Munsey Park Assocs.*,
647 N.Y.S.2d 247 (1996) .......... 24

*Murray v. Xerox Corp.*,
811 F.2d 118 (2d Cir. 1987) .......... 18

*Newby v. Bank of Am.*,
2013 U.S. Dist. LEXIS 33276 (E.D.N.Y. 2013) .......... 16

*Newman v. Wells Fargo Bank*,
924 N.Y.S.2d 264 (2011) .......... 16

*Nolan v. Sam Fox Publ'g*,
499 F.2d 1394 (2d Cir. 1974) .......... 22

*Novakovic v. Wells Fargo Bank, N.A.*,
2024 N.Y. App. Div. LEXIS 2852 (2d Dept 2024) .......... 24

*Ortiz v. Eldert 294, LLC*,
204 N.Y.S.3d 229 (2024) .......... 23

*PPI Enters. v. Del Monte Foods*,
2003 U.S. Dist. LEXIS 16006 (S.D.N.Y. 2003) .......... 20

*Pravda v. Gleeson*,
200 N.Y.S.3d 791 (2023) .......... 23

*Reid v. IBM*,
1997 U.S. Dist. LEXIS 8905 (S.D.N.Y. 1997) .......... 23

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997) .......... 11

*Sec. Inv 'r Prot. Corp. v. BDO Seidman, L.L.P.*,
95 N.Y.2d 702 (2001) .......... 13

*Simms v. Biondo*,
816 F.Supp. 814 (E.D.N.Y. 1993) .......... 16

*Sky Coverage Inc. v. Alwex Inc.*,
144 N.Y.S.3d 342 (2021) .......... 22

*Skyline Risk Mgmt. v. Legakis*,
2024 U.S. Dist. LEXIS 84672 (S.D.N.Y. 2024) .......... 14

*Sotheby's Fin. Servs. v. Baran*,
107 F.App'x 235 (2d Cir. 2004) ........................................ 16

*U.S. v. Toscano*,
799 F.Supp.2d 230 (E.D.N.Y. 2011) ........................................ 20

**Statutes**

Fed. R. Civ. P. 56 ........................................ 10

N.Y. Real Prop. Law § 294 ........................................ 24

**PRELIMINARY STATEMENT**

In October 2017, Yisroel Weingot ("Yisroel") and Suri Weinberger a/k/a Suri Weingot ("Suri") (collectively, "Plaintiffs") discovered Unison Agreement Corp. ("Unison"), a residential equity agreement company that helps homeowners unlock equity in their real property without incurring interest, debt, or monthly payments. After months of discussions with Unison, and completing Unison's comprehensive consumer education program, Plaintiffs entered into an option contract with Unison whereby Unison immediately paid Plaintiffs $115,000, and in exchange, Plaintiffs granted Unison an option to purchase, in the future, an undivided 68.86% interest in the subject property upon Unison paying an additional purchase price payment to Plaintiffs at the time the option is exercised or settled. The economic result is that if the property appreciates from the initial appraised value of $668,000, Unison shares in that appreciation (upon exercising or settling the option), but if the property depreciates, Unison can incur a loss of its investment. In other words, Unison risks its investment of $115,000 and its economic success is contingent upon the property's appreciation—*if any*. Moreover, it is undisputed that Plaintiffs are not obligated to repay the $115,000 at option exercise or settlement.

Despite the clear terms of the option and related agreements, Plaintiffs file suit against Defendants[1] seeking to rescind the option due to misrepresentations Plaintiffs claim Unison made prior to Plaintiffs signing the agreements. Specifically, Plaintiffs claim Unison fraudulently misrepresented its product to Plaintiffs—namely, that the contract provided Defendants with a greater interest in the property than Plaintiffs were told. Based on this theory, three claims remain: (i) fraud as to *Unison*, (ii) rescission based on fraud as to *Unison*, and (iii) quiet title. But the

[1] Unison, Real Estate Equity Exchange, Inc. ("REX"), and Odin New Horizon Real Estate Fund L.P. ("Odin New Horizon") (collectively, "Defendants").

unequivocal evidence establishes there is no triable issue of material fact as to any of Plaintiffs' remaining claims and that Defendants are entitled to judgment for at least the following reasons:

Suri cannot establish her fraud claims as the undisputed evidence proves she never spoke with Unison and never reviewed Unison's website or materials, and therefore she has no personal knowledge as to the alleged misrepresentations central to the pleadings. For this reason, Suri cannot establish any of her fraud claims, which is also futile to her recission based on fraud claims.

Notwithstanding Suri's inability to prove fraud, Plaintiffs have not—and cannot—present any admissible evidence establishing Unison's alleged misrepresentations are false—in fact, the undisputed evidence shows otherwise. Plaintiffs' fraud theory is premised on purported statements that the option contract entered into with Unison, which granted Unison an option to purchase 68.6% interest in the property, actually meant Unison receives the *entire value* of the property, not just the *change in value* (i.e., appreciation or depreciation) from after entering into the contract. Plaintiffs' misreading of the contractual language regarding option settlement overstates any benefit to Unison by entirely omitting that Unison must simultaneously pay Plaintiffs an additional purchase price of $344,985 at option exercise or settlement. In sum, and when reading the full language of the contract, upon exercise or settlement of the option, Unison only *nets* 68.86% of the change in value from the time it entered the option. Thus, Plaintiffs cannot establish any misrepresentation based on these calculations.

Plaintiffs' remaining alleged misrepresentations and omissions fail for similar reasons. Plaintiffs allege Unison misrepresented it converts *up to* 17.5% of a homeowner's home value to cash, but this statement is demonstrably accurate. Here, Unison paid Plaintiffs $115,000 based on an appraised value of $668,000, which equates to converting 17.2% of the home's value to cash, which is consistent with Unison's purported statement. Plaintiffs also allege Unison, in its sole

discretion, presented and relied upon a below market appraisal of the property to mislead Plaintiffs. Yet, the appraisal was requisitioned by a third-party, *not* Unison, and Plaintiffs had the contractual ability to request a reconsideration of the appraisal, which they did not. In any event, New York law is clear that valuations are a non-actionable opinion and cannot form the basis of a fraud claim.

Even if Plaintiffs could prove a misrepresentation or omission, they cannot prevail on their fraud claims as the evidence shows Unison had no knowledge of any falsity or intent to defraud Plaintiffs. Likewise, Plaintiffs cannot establish reasonable reliance on Unison's purported misrepresentations. While Plaintiffs allege had they known the nature of the option they would not have entered into an agreement with Unison, the undisputed evidence confirms Yisroel always knew that by signing the agreements, Unison would share in the property's potential appreciation, a fact fatal to any alleged reliance. Even then, the undisputed evidence shows Plaintiffs suffered no pecuniary loss since they have made no payments to Defendants let alone a pecuniary loss that was the direct, immediate, and proximate result of Unison's alleged actions. Because Plaintiffs cannot establish the necessary elements for their fraud claims, Defendants are entitled to judgment.

Defendants are also entitled to judgment on Plaintiffs' recission based on fraud claim, which is based on the same disproven fraud theories. Even if they could establish each fraud element, which they cannot, Plaintiffs do not lack an adequate remedy considering money damages are the very remedy used under the contract and Plaintiffs' continued acceptance of the $115,000 since 2018, despite receiving quarterly notices explaining Unison's potential share in the property's appreciation, amounts to a ratification which precludes rescission.

Lastly, REX is entitled to judgment on Plaintiffs' quiet title claims because it is undisputed that REX is not a party to the agreements and holds no interest in the agreements. Unison and Odin are similarly entitled to judgment as the unequivocal evidence shows neither hold legal interest in

the property because the option has not exercised—and thus there is no basis to quiet title as to property ownership. Even if Unison's secured lien, which was assigned to Odin New Horizon, constitutes a sufficient interest, Plaintiffs cannot establish the lien is invalid or inoperative.

Since Plaintiffs cannot raise triable issues of fact on the essential elements of their claims, Defendants are entitled to summary judgment, or alternatively, partial summary judgment.

## **FACTUAL BACKGROUND**

### A. Unison's HomeOwner Program

Unison's HomeOwner product is an alternative to a home equity loan and allows homeowners to unlock equity in their real property without interest, debt, or monthly payments. ECF No. 57-1, Defendants' Statement of Material Fact ("SMF") ¶ 1. The homeowner grants Unison an option to purchase a percentage interest in the homeowner's real property, in the future, at an agreed-upon price based on a third-party appraisal. *Id.* ¶ 2. At the option signing, the homeowner receives the benefit of a cash payment from Unison and, in exchange, Unison shares in the risks and rewards of the property's change in value from then to the time the option is exercised or settled (most commonly upon the sale of the property). *Id.* ¶ 3.

If the market goes up, Unison and the homeowner share in the increased value of the property. SMF ¶¶ 2-3, 5, 31-33. If the market declines, both parties share in the loss, but the homeowner retains the investment payment from Unison. *Id.* ¶¶ 2-3, 5, 31-35. Because it's an investment and not a loan, there are no monthly payments on the investment payment. *Id.* ¶¶ 1, 3-4, 22, 29, 32. The homeowner is not obligated to repay any part of the investment payment. *Id.* ¶¶ 22, 29, 32. In fact, there are no payments to Unison until the homeowner decides to sell the property or if other defined exercise events occur. *Id.* ¶¶ 4, 28-29, 31-33. In other words, the final economics of the option depend on housing market forces beyond the parties' control and the homeowner's

decision as to if, and when, it sells the property.[2] *Id.* ¶ 5. Regardless of the future value of the property the homeowner takes on no debt. *Id.* ¶¶ 1, 8.

**B. Plaintiffs' HomeOwner Option Agreement and Related Contracts with Unison**

Plaintiffs own real property located at 973 Benton Street, Woodmere, NY 11598 (the "Property"). SMF ¶ 10. In or around October 2017, Yisroel discovered Unison's website after exploring ways to utilize the equity in the Property. *Id.* Around October 31, 2017, Unison and Yisroel engaged in discussions about Unison's HomeOwner program. *Id.* ¶ 11. On or about November 6, 2017, Unison sent Plaintiffs an application package enclosing educational materials explaining Unison's HomeOwner product. *Id.* ¶ 13. Thereafter, Unison received a signed application for the HomeOwner product from Plaintiffs. *Id.* ¶ 14. On December 21, 2017, Unison sent its HomeOwner Program Guide to Plaintiffs, which further explained Unison's HomeOwner product. *Id.* ¶ 15. On December 28, 2017, ServiceLink Valuation Solutions, LLC ("ServiceLink"), an independent third-party unaffiliated with Unison, appraised the Property value at $668,000 as of December 28, 2017.[3] On January 2, 2018, Unison sent Plaintiffs choices for the cash investment payment of *up to* 17.5% of the Property's appraised value ($668,000) along with the investor percentage shares in the future change in value of the Property based on the appraised value. *Id.* ¶ 19. In or around January 2018, Yisroel completed Unison's comprehensive consumer education program (known as the PKR) explaining Unison's HomeOwner product. *Id.* ¶ 20.

Thereafter, Plaintiffs received a written offer (the "Offer") from Unison, which Plaintiffs subsequently signed. *Id.* ¶ 21. The Offer listed the agreed value of the Property as $668,000 and investor percentage as 68.86%. *Id.* In January 2018, Plaintiffs entered into an agreement with

---

[2] The homeowner, and not Unison, may request a special termination of the option contract after three years by paying Unison the special termination price as outlined in the agreements. SMF ¶ 9.
[3] Unison did not receive any request for reconsideration of this appraisal from Plaintiffs. *Id.* ¶ 18.

Unison and executed four key documents effective January 15, 2018: Option Agreement ("Option"), Covenant Agreement ("Covenant"), Memorandum of Unison HomeOwner Agreement ("Memorandum"), and Mortgage and Security Agreement ("Mortgage") (collectively, the "Agreements"), the latter two Unison recorded in the Nassau County Clerk's Office. *Id*. ¶ 22. The Agreements were subsequently assigned to Odin New Horizon pursuant to a recorded assignment. *Id*. ¶ 23. The Agreements were never assigned to REX, who is not a party to the Agreements and holds no interest in the Agreements. *Id*.

Yisroel understood that by signing the Agreements Plaintiffs and Unison would share in any future appreciation of the Property. *Id*. ¶ 25. Suri, however, did not have any understanding of the Agreements at the time she signed because she did not read them. *Id*. ¶ 24.

Pursuant to the Option, Unison paid Plaintiffs $115,000 as the investment payment ("Investment Payment"), minus a transaction fee and closing costs, which resulted in Plaintiffs receiving $107,715. *Id*. ¶ 26. The Investment Payment equals 17.2% of the Property's appraised value of $668,000. *Id*. ¶ 27. In exchange for the Investment Payment, Plaintiffs granted Unison an option "to purchase, in the future, an undivided 68.86% interest" in the Property upon Unison paying an additional purchase price of $344,985 at option exercise or settlement ("Balance Payment"). *Id*. ¶ 28.[4] Plaintiffs, however, are not obligated to repay the Investment Payment at option exercise or settlement. *Id*. ¶ 29.

The Agreements memorialize the Investment Payment Unison paid Plaintiffs [*id*. ¶¶ 22, 26, 28 (Ex. L, Option §§1(a), 10)], the 68.86% interest Plaintiffs granted to Unison in exchange of the Investment Payment [id.], and the Balance Payment Unison would pay to Plaintiffs if Unison

[4] The Investment Payment of $115,000, combined with the Balance Payment of $344,98 at Option exercise together equals 68.86% of the Property's original appraised value of $668,000. *Id*. ¶¶ 33-34.

exercised the Option. *Id*. ¶¶ 22, 26, 28 (Ex. L, Option §§1(a), 1(c), 10). The Agreements also memorialize the original appraised value of $668,000. *Id*. ¶ 22 (Ex. L, Option §§4, 10). The Option summarized the nature of the transaction in plain language by stating:

> **The Unison Investment Payment is not a loan. The Unison Investment Payment is not a principal amount which [Unison] is contractually or otherwise entitled to recover at Term or at Option exercise. The Investor Proceeds [(i.e., the net amount obtained by Unison at option exercise)] may be greater than, equal to, or less than the Unison Investment Payment, or zero, depending upon the change in the value of the Property (the difference between the Original Agreed Value and the Ending Agreed Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or other periodic payments to [Unison] calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.**

*Id*. ¶ 22 (Ex. L, Option § 6 (emph. in original)).

The Agreements cautioned Plaintiffs to "READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT" [SMF ¶ 22 (Exs. M-O)] and "urged [them] to discuss the Option with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of their risks and benefits." *Id*. ¶ 22 (Ex. M, Covenant §2.3).

Unison can only exercise the Option after: (1) the expiration of the 30-year term, (2) an arms' length sale of the Property, (3) death of the last surviving homeowner, or (4) an owner default (collectively, an "Exercise Event"). *Id*. ¶ 30 (Ex. L (Option §2)). Even upon the occurrence of an Exercise Event, Unison has *the right* but is not obligated to exercise the Option. *Id*. ¶ 31. Even if an Exercise Event occurs, the Agreements do not provide Unison with an unconditional right to recover the Investment Payment. *Id*. ¶ 32. That is, because if the Property depreciated, Unison could incur a loss on its investment. *Id*. ¶ 35.

### C. Settlement of the Option Agreement

Plaintiffs can settle the Option *if* Unison elects to exercise the Option after the occurrence of any Exercise Event. SMF ¶¶ 28-34. If the Property is sold (the most common Exercise Event), the Option is settled at closing of the sale. *Id.* ¶¶ 4-5, 30-34.[5] Plaintiffs settle the Option by disbursing the sale proceeds as follows: (1) Unison receives the sale price multiplied by the percentage interest it can purchase (here, 68.86%) minus the Balance Payment Unison must make in exercising the Option ($344,985); and (2) Plaintiffs receive the sale price multiplied by their percentage in the Property (here, 31.14%) plus the Balance Payment ($344,985). *Id.* ¶¶ 33-34. In sum, if the Option is exercised or settled, the settlement is calculated as follows:

- **Plaintiffs Receive**: $115,000 (at signing), $344,985 (at exercise or settlement) (totaling $459,985) and 31.14% of the sale proceeds, which equates to receiving the original value of the Property ($668,000) plus 31.14% of the appreciation, *if any*. *Id.* ¶¶ 33-34.
- **Unison Receives**: 68.86% of the sale proceeds *minus* $459,985 ($115,000 at signing, $344,985 at exercise), which equates to Unison receiving 68.86% of the value of the Property at the time of the sale and paying 68.86% of the original value of the Property, resulting in a *net benefit* of 68.86% of the appreciation, *if any*. *Id.* ¶¶ 33-34. If the Property depreciates, Unison pays a total equaling 68.86% of the higher value of the Property at Option signing, would receive 68.86% of the lower value of the Property at the sale, resulting in Unison losing money on its investment, even up to a complete loss of its Investment Payment. *Id.* ¶ 35.

Since entering the Agreements in 2018, Unison sent Plaintiffs quarterly statements which identified the agreed $668,000 value of the Property, the Investment Payment, Unison's share of

[5] If Plaintiffs settle the Option, it is based on the Property's fair market value at the time of settlement. *Id.* ¶ 36.

the change in value to the Property, along with estimates of the Property's current value and the resulting estimated share of the change in property value for Plaintiffs and Unison. *Id*. ¶ 41.

On February 9, 2021, at Plaintiffs' request, Unison sent a written payoff to Plaintiffs along with information regarding the process to terminate the Agreements, but Plaintiffs did not move forward with any payoff or the process to terminate the Agreements. *Id*. ¶¶ 38-39. To date, Unison has not exercised the Option. *Id*. ¶ 37. Since receiving the Investment Payment, Plaintiffs have made no payments to Unison and have not repaid any part of the Investment Payment, nor are they obligated to do so. *Id*. ¶¶ 7, 29, 40.

## PROCEDURAL BACKGROUND

On May 28, 2021, Plaintiffs filed suit against Defendants in the Supreme Court of New York, County of Nassau. ECF No. 1. After removal and Defendants' request for leave to file a motion to dismiss, this Court ordered the parties to mediation, and if unsuccessful, granted Plaintiffs leave to file an amended complaint (the "FAC"), and Defendants to file a motion to dismiss. *Id*. at 15. On August 22, 2022, Plaintiffs filed their FAC alleging they explored ways to obtain money and found Unison's website. FAC ¶¶ 30-32, 37. After speaking with a Unison representative, Plaintiffs applied for and ultimately accepted Unison's offer and entered the Agreements, where Unison paid Plaintiffs $115,000 in exchange for an option to purchase 68.86% of the Property's future appreciation. *Id*. ¶¶ 37-43. Plaintiffs, however, allege Defendants made misrepresentations regarding its product and on based on this theory asserted fifteen causes of action against Defendants. *See generally* FAC.

After a pleading challenge, three claims remain: fraud *as to Unison*,[6] rescission based on

[6] Plaintiffs' fraud claims include their first, second, and third cause of action for common law fraud and fraudulent misrepresentation. FAC ¶¶ 61-83. This Court dismissed Plaintiffs' first, second, and third causes of action as against REX and Odin. ECF No. 54.

fraud *as to Unison*,[7] and quiet title *as to Defendants*.[8] ECF No. 54. Plaintiffs' claims are based on purported statements that the option to purchase a 68.6% interest in the Property means Unison receives the entire value of the Property, not just the change in value. FAC ¶¶ 17-20, 44, 64.

On July 29, 2024, Defendants filed their request for a pre-motion conference to file their motion for summary judgment, or alternatively partial summary judgment. ECF No. 57. After full briefing, on October 3, 2024, this Court granted Defendants leave to file their motion for summary judgment and waived its pre-motion conference requirement.

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence, "including depositions, documents [and]...affidavits or declarations," *id*. at 56(c)(1)(A), which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing…that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations and citations omitted).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted). Likewise, "[s]tatements [] devoid of any specifics, but replete with conclusions,

---

[7] On March 30, 2024, this Court granted Defendants' motion to dismiss Plaintiffs' recission claim against REX and Odin. ECF No. 54.

[8] Plaintiffs' quiet title claims include their fourth and thirteenth cause of action. *Id*. ¶¶ 84-89, 151-61.

are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial" *Celotex*, 477 U.S. at 322.

## LEGAL ARGUMENT

## I. PLAINTIFFS CANNOT PROVE FRAUD

To prevail on fraud, Plaintiffs must prove: a misrepresentation or omission, made with knowledge of falsity and intent to defraud, reasonable reliance, and damages. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). For an omission, Plaintiffs must prove a duty to disclose due to a fiduciary relationship or that Unison "possesses superior knowledge, not readily available to [plaintiff], and knows [plaintiff] is acting on the basis of mistaken knowledge." *Loreley Fin. No. 3 v. Wells Fargo Sec.*, 13 F.4th 247, 263-64 (2d Cir. 2021) (affirming judgment where information could have been discovered through the "exercise of ordinary intelligence.").

### A. Suri Cannot Establish Fraud Claims Against Unison as She Admittedly Never Spoke to Unison and Has No Knowledge of the Alleged Misrepresentations

As set forth herein, Plaintiffs' fraud claims rely on the notion that Unison made misrepresentations to Plaintiffs, including statements on its website and in the Agreements Plaintiffs signed. FAC ¶¶ 11-19, 21, 37-38, 56. However, Suri cannot establish any fraud claims against Unison as she has no personal knowledge as to the alleged misrepresentations. *See*, *e.g.*, SMF ¶ 16 (citing Ex. BB, Suri Dep. Tr. 35:10-18 (Q. "Do you have any information as to why the statement [...] we share in a portion of your home's change in value is allegedly false?" A. "No.")). Suri admittedly never spoke to Unison nor reviewed its website or any of Unison's educational documents before entering the Agreements. *Id.* ¶ 16 (citing Ex. BB, Suri Dep. Tr. 16:3-15 (admitting Suri had no discussions with Unison, never called or emailed Unison to discuss

Unison's HomeOwner product, and never reviewed Unison's website), 28:22-29:2 (Q. "Did you speak with Unison at any point before signing the agreements?" A. "No." Q. Did you speak with Unison at any point after signing the agreements?" A. "No.")). Nor did Yisroel share any information with Suri regarding his discussions with Unison or his review of Unison's website. *Id.* (citing Ex. BB, Suri Dep. Tr. 16:16-23 (Q. "Did your husband ever share any information with you with respect to his discussions with Unison?" A. "No." Q. "Did your husband ever share any information with you with respect to his review of Unison's website?" A. "No.")). This is undisputed. ECF No. 58.1, Plaintiffs' Responses to Defendants' Statement of Material Facts ("Plaintiffs' 56.1 Counterstatement") ¶ 16.

It is also uncontroverted that Suri never reviewed the Offer or any of the Agreements prior to signing them and thus had no understanding of the Agreements when she signed them. SMF ¶ 24 (citing Ex. BB, Suri Dep. Tr. 21:18-23:10 (admitting she did not read the Offer before signing it and did not understand the Offer prior to signing it), 23:20-24:19 (admitting she did not review the Option before signing it), 24:23-27:19 (admitting she did not review the Covenant, Memorandum, and Mortgage before signing and did not have an understanding of those documents before signing)); Plaintiffs' 56.1 Counterstatement ¶ 24. Suri thus cannot prove a misrepresentation or reasonable reliance. *Loreley Fin.*, 13 F.4th at 260-62 (holding statements not communicated to a party cannot form the basis of its reliance); *see Sec. Inv 'r Prot. Corp. v. BDO Seidman, L.L.P.*, 95 N.Y.2d 702, 710 (2001) (a plaintiff "cannot claim reliance on alleged misrepresentations of which it was unaware even by implication."). Since Suri admittedly had no knowledge of the purported misrepresentations and neither communicated with Unison nor reviewed Unison's website or documents, she cannot prove her fraud claims. Suri's rescission claim, which is based on fraud, also therefore necessarily fails as a result.

### B. Plaintiffs Cannot Establish a Misrepresentation[9]

The crux of Plaintiffs' fraud claim relies on five alleged misrepresentations. But as set forth below, Plaintiffs have not—and cannot—adduce any admissible evidence establishing these statements are false, let alone that Unison made these statements to Plaintiffs prior to Plaintiffs voluntarily executing the Agreements. Put simply, Plaintiffs cannot establish any misrepresentations. Defendants are therefore entitled to judgment as a result.

#### 1. <u>Statement 1</u>: Unison "share[s] in a portion of your home's change in value when you decide to sell" [FAC ¶¶ 16-18, 20, 37-38, 44-46, 76].

First, Plaintiffs allege Unison misrepresented it shares in a portion of the Property's change in value when Plaintiffs decide to sell. FAC ¶¶ 16-18, 20, 37-38, 44-46, 76. But aside from self-serving conclusions, Plaintiffs present no evidence to support their claim that this statement is false—nor can they. It is undisputed that at Option singing, Plaintiffs received the Investment Payment, and in exchange, Plaintiffs granted Unison an option "to purchase, in the future, an undivided 68.86% interest" in the Property upon Unison paying Plaintiffs an additional purchase price of $344,985 at option exercise or settlement. SMF ¶ 28. Unison indeed shares in the risk and rewards of the Property's change in value from the time it makes the Investment Payment to the time the Option is exercised or settled. *Id.* ¶¶ 3, 6-7. The Option and formula used to settle it are not only expressly set forth in the Offer and Agreements Plaintiffs undisputedly signed [*id.* ¶¶ 1-7, 13-15, 19-22] but are further explained on Unison's website and in educational documents, which were sent to Plaintiffs and which Yisroel completed before signing the Agreements. Id. When calculating the formula, Unison shares in a portion (68.86%) of the Property's change in value (i.e., appreciation or depreciation) from origination to settlement. *Id.* ¶¶ 6-7, 28-35.

---

[9] Like Suri, Yisroel cannot introduce evidence establishing any fraud as he admits he is not qualified to provide a basis for the alleged misrepresentations and does not recall the substance of his discussions with Unison. *See* SMF ¶ 12 (citing Ex. AA, Yisroel Dep. Tr. 133:5-14, 136:12-24, 138:18-139:19).

Plaintiffs' misplaced theory stems from their failure to account for the Balance Payment ($344,985) that Unison must make to Plaintiffs at exercise or settlement, which results in Unison receiving a *net* share of 68.86% the change in value. *Id*. Since Plaintiffs' claim is refuted by the signed Agreements, they cannot prove any misrepresentation.

2. **<u>Statement 2</u>: Unison "convert[s] up to 17.5% of your home's value to cash, so you can live the life you really want" [FAC ¶ 16].**

Second, Plaintiffs allege Unison misrepresented it converts up to 17.5% of the Property's value to cash. FAC ¶ 16. Yet, Plaintiffs cannot establish this statement is false. Unison gave Plaintiffs choices for the cash investment payment of *up to* 17.5% of the Property's appraised value ($668,000) along with the investor percentage shares based on that appraised value. SMF ¶ 19. It is undisputed Plaintiffs elected to convert 17.2% of the Property's appraised value ($668,000) and based on that election, received the Investment Payment ($115,000). *Id*. ¶¶ 19, 27; Plaintiffs' 56.1 Counterstatement ¶ 27. Because the Investment Payment equals 17.2% of the Property's appraised value (i.e., $115,000/$668,000 equals 17.2%), Plaintiffs cannot establish this statement is false. *See Skyline Risk Mgmt. v. Legakis*, 2024 U.S. Dist. LEXIS 84672, at *24-25 (S.D.N.Y. 2024) (granting summary judgment on fraud claim, in part, because conduct was permitted and therefore not a misrepresentation); *First Nat'l State Bank v. Irving Tr. Co.*, 457 N.Y.S.2d 17, 19 (1982) ("there can be no liability in fraud where the complaining party is, in advance, fully knowledgeable and apprised of those matters as to which the representations are alleged to have deceived.").

3. **<u>Statement 3</u>: "Unlike a loan there is no added debt, monthly payments, or interest" [FAC ¶ 16].**

Third, Plaintiffs allege Unison misrepresented there is no added debt, monthly payments, or interest. FAC ¶ 16. Plaintiffs, however, have not and cannot present evidence supporting their claim. Under Unison's product, it is undisputed the homeowner takes on no debt. SMF ¶ 8.

Plaintiffs make no monthly payments, accrue no interest, and are not obligated to repay the Investment Payment at exercise or settlement. *Id*. ¶¶ 1, 4, 8, 29, 40. In fact, there are no payments to Unison until Plaintiffs decide to sell the Property or an Exercise Event occurs and Unison elects to exercise the Option. *Id*. ¶¶ 30-35. And it is undisputed that Unison has not exercised the Option. *Id*. ¶ 37. Since Plaintiffs cannot establish a false statement, they cannot establish fraud.

**4. <u>Statement 4</u>: Plaintiffs can buyout at any time without penalty [FAC ¶ 19].**

Plaintiffs have not and cannot adduce evidence establishing Unison made this statement to Plaintiffs *before* signing the Agreements. SMF ¶¶ 12, 16. Yisroel, the only party to speak to Unison, does not recall the substance of any conversation. *Id*. (citing Ex. AA, Yisroel Dep. Tr. 29:2-4 (Q. "And what did you and Eric [the Unison representative] discuss on the call[?]" A. "I don't recall.")).[10] Additionally, Suri admitted no one told her she had the ability to buy out at any time without penalty. SMF ¶ 16 (citing Ex. BB, Suri Dep. Tr. 40:23-41:1 (Q. "Did anyone ever tell you at any point that you have the ability to buy out at any time without penalty?" A. "No.")). In any event, the evidence makes clear that Plaintiffs can only utilize the limited buyout right *after three years* and they must pay the special termination price but owe no "penalty." *Id*. ¶ 9; FAC ¶ 48.[11] Because Plaintiffs cannot present evidence showing Unison made this statement, let alone it was made *before* Plaintiffs signed the Agreements, they simply cannot establish their claims and Defendants are entitled to judgment as a result.

---

[10] Relevant here, Plaintiffs do not dispute these facts. Plaintiffs' 56.1 Counterstatement ¶¶ 12, 16.

[11] To the extent Plaintiffs allege Unison misrepresented that repayment of $115,000 is "guaranteed," the evidence proves otherwise. FAC ¶¶ 48-51. Plaintiffs are not obligated to repay the $115,000 at option exercise or settlement, which is undisputed. SMF ¶¶ 7, 29, 32 (*citing* Ex. AA, 83:16-25 (admitting if the Property depreciated at option exercise or settlement "then Unison would take somewhat less from the 115 payment….")). Plaintiffs only repay $115,000 if they terminate the Agreements via their limited buyout right. *Id.* ¶¶ 9, 22, 38. Even so, this right does not constitute a "guarantee" of repayment since Plaintiffs–not Unison–decide whether to pursue it. *Id.* ¶ 9; *see Foster v. Equitykey Real Est. Invs.*, 2017 WL 1862527, at *4 (N.D. Cal. 2017) (holding an option to share in appreciation was not repayable absolutely and thus "not a loan" under state and federal laws).

**D. Appraisals Cannot Establish Fraud**

Plaintiffs next contend Unison solely determined the appraisal to mislead and "artificially inflate" the amount it receives. FAC ¶¶ 22, 34, 40-41, 70-73. Yet, it is undisputed that ServiceLink, a third-party unaffiliated with Unison, performed the appraisal. SMF ¶ 17; Plaintiffs' 56.1 Counterstatement ¶ 17. Moreover, Unison did not *solely* determine the appraisal, as Plaintiffs could have requested a reconsideration, but did not. SMF ¶¶ 18, 22; ECF No. 54, p. 13. Nevertheless, Plaintiffs cannot prove fraud as valuations are a non-actionable opinion. *Sotheby's Fin. Servs. v. Baran*, 107 F.App'x 235, 238 (2d Cir. 2004) (affirming summary judgment on fraud claim where representation of an opinion of value could not form the basis of fraud); *Newby v. Bank of Am.*, 2013 U.S. Dist. LEXIS 33276, *16-17 (E.D.N.Y. 2013) (rejecting fraud based on alleged inflated third-party appraisal); *Newman v. Wells Fargo Bank*, 924 N.Y.S.2d 264, 265 (2011) ("Appraisals are not actionable because they are matters of opinion."); *Simms v. Biondo*, 816 F.Supp. 814, 819 (E.D.N.Y. 1993) (acknowledging rule that statements of value are not actionable for fraud).

**E. Plaintiffs Cannot Prove an Omission**

Plaintiffs further allege Unison failed to disclose unspecified "material information…required by Federal Statutes and Regulations,"[12] the "undervaluation of the Property," "the actual interest conveyed to Defendants being the entire value of the Property and not just an interest in the change in value," and that the product "functions as a loan." FAC ¶¶ 64, 75, 77-78. None of these facts establish an omission. First, to establish an omission, Plaintiffs must show Unison owed Plaintiffs a duty, which they cannot. *Loreley Fin.*, 13 F.4th at 263 (affirming summary judgment on a fraudulent concealment claim where it was undisputed the parties were not in a fiduciary relationship); *Mid-Island Hosp. v. Empire Blue Cross & Blue Shield*, 276 F.3d

[12] This allegation relates to Plaintiffs' dismissed Truth in Lending Act claim. FAC ¶¶ 95-108; ECF No. 54.

123, 130 (2d Cir. 2002) (no duty exists when parties deal in an arm's length transaction). Likewise, Plaintiffs cannot establish Unison possessed superior knowledge not readily available to Plaintiffs, especially considering the facts allegedly omitted are expressly disclosed in the Agreements Plaintiffs signed, including the $668,000 value of the Property, the option grant to Unison to purchase a 68.86% interest in the Property, and the formula used at Option exercise or settlement. SMF ¶¶ 22, 28, 33-35.[13] Additionally, Plaintiffs' allegation that Unison "knowingly concealed material information" [FAC ¶ 75] cannot form the basis of their fraud claim since Plaintiffs have not and cannot proffer evidence demonstrating what Unison failed to disclose, let alone that Unison was required to disclose such information. And, to the extent Plaintiffs' theory relies on an omission regarding the "undervaluation of the Property," [*id.* ¶¶ 64, 78] this cannot prove fraud as valuations are non-actionable opinion. *See supra*. Thus, Plaintiffs cannot establish any omission to support their fraud claims. Because Plaintiffs cannot establish any fraudulent representation or omission, a necessary element of their fraud claims, Defendants are entitled to judgment.

**F. Plaintiffs Cannot Prove Knowledge, Intent, or Reasonable Reliance**

Plaintiffs also cannot prevail on their fraud claims as the evidence demonstrates Unison did not have the requisite knowledge of falsity or intent to defraud Plaintiffs, and Plaintiffs have not, and cannot, establish their reasonable reliance on Unison's purported misrepresentations.

As a threshold matter, since Plaintiffs do not establish a false statement or omission, they cannot establish Unison's knowledge, intent to defraud, or reliance. *In re Rubin Bros. Footwear*, 119 B.R. 416, 424 (S.D.N.Y. 1990) (essential to fraud is "that defendant actually made to plaintiff

[13] *LoanStreet v. Troia*, 2023 U.S. Dist. LEXIS 159539, at *20 (S.D.N.Y. 2023) (granting dismissal where facts omitted did not contradict the agreement); *see Humble Oil & Ref. v. Jaybert Esso Serv. Station*, 30 A.D.2d 952, 952 (1968) ("The law does not relieve a person merely because he has failed to read a document [] he has executed.").

a false or materially misleading statement."); *see Kazmark v. Wasyln*, 91 N.Y.S.3d 560 (2018) (granting summary judgment where evidence established no knowledge of purported falsity).

Even if Plaintiffs could establish a false statement made by Unison, which they cannot, they fail to present evidence of knowledge or fraudulent intent apart from their conclusory and unsubstantiated allegations. *See*, *e.g.*, FAC ¶ 63 ("Defendants acted with the intent that Plaintiffs rely on its false representations and with full knowledge that Plaintiffs would rely on its false representations…"); *Bogart v. Shearson Lehman Bros.*, 1995 U.S. Dist. LEXIS 1291, at *4 (S.D.N.Y. 1995) ("to defeat summary judgment, a plaintiff cannot rely merely on the allegations of the complaint but 'must set forth specific facts showing that there is a genuine issue for trial.'"); *Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir. 1987) (affirming summary judgment because the plaintiff "failed to offer evidence of [the defendant's] fraudulent intent" at the time it made an allegedly fraudulent representation). Even so, there is no evidence Unison had a motive and opportunity to commit fraud, or a benefit stemming from the alleged misrepresentation *Learning Experience Sys.*, LLC v. Collins, 2023 U.S. Dist. LEXIS 159388, at *45 (E.D.N.Y. 2023) (fraudulent intent can be shown by showing the defendant "had both motive and opportunity to commit fraud," or "strong circumstantial evidence of conscious misbehavior or recklessness."); *Congelados del Cibao v. 3 Kids Corp.*, 2022 U.S. Dist. LEXIS 80333, at *33 (S.D.N.Y. 2022) (granting judgment where continuing a beneficial business relationship was insufficient motive to show intent).[14] To the contrary, Plaintiffs–not Unison–benefitted from entering the Agreements as they received Investment Payment, which they are not obligated to repay. SMF ¶¶ 7, 26, 29, 32.

---

[14] *See Goonewardena v. Forster & Garbus LLP*, 2019 U.S. Dist. LEXIS 2680, at *19 (E.D.N.Y. 2019) ("To show motive and opportunity, a plaintiff must allege that the defendant benefitted in some concrete and personal way from the purported fraud.").

As to reliance, Plaintiffs allege if they knew "the truth…[they] would not have transferred an ownership interest to Defendants," but this cannot prove reasonable reliance. FAC ¶¶ 67-69. The undisputed material facts show Yisroel, in-fact, always knew the "truth"—i.e., that Unison would share in the Property's potential appreciation.[15] SMF ¶ 25 (citing Ex. AA, Yisroel Dep. Tr. 74:6-22 (Q: "What was your understanding of how [Unison] would benefit in the home?" A: "Their benefit…would be that if the [value of the Property] goes up at the time of the sale or 30 years, then they would take a percentage of that."), 85:6-12 (admitting at option settlement Plaintiffs would owe Unison "a percentage of what the house went up."), 61:13-21, 63:7-64:2, 73:23-74:6, 77:8-78:22, 81:14-83:25, 84:16-85:6).

Further, Plaintiffs cannot establish any reliance was reasonable given Unison's website, offer, educational documents, and Agreements each explain these fundamental concepts involving the mechanics of the Option, the process by which Plaintiffs can settle the Option, and the amounts Plaintiffs and Unison would receive based on estimated settlement scenarios. *Id*. ¶¶ 10-11, 13-15, 20-22. Since Plaintiffs had access to this information for months before entering the Agreements, they cannot establish their reliance was reasonable or justifiable. *PPI Enters. v. Del Monte Foods*, 2003 U.S. Dist. LEXIS 16006, at *68 (S.D.N.Y. 2003) ("a plaintiff cannot establish justifiable reliance when 'by the exercise of ordinary intelligence' it could have learned of the information it asserts was withheld."); *see 88 Blue Corp. v. Reiss Plaza Assocs.*, 183 A.D.2d 662, 664 (1992) (reversing grant of summary judgment and awarding judgment in favor of defendant as plaintiff cannot rely on a misrepresentation since it had the means to discover the true nature of the transaction as the relevant notices were affixed to the underlying contract "when plaintiff executed it, and at the very least, should have been apparent shortly thereafter."). Even then, the Agreements

[15] As discussed, at signing, Suri had no understanding of the Agreements because she did not read them. SMF ¶ 24.

set forth that at Option exercise or settlement Unison only receives a net benefit of 68.86% of the appreciation, *if any*, from option signing to settlement. SMF ¶¶ 33-35. In other words, the language of the Agreements contradicts Plaintiffs' allegation Unison receives the *entire value* of the Property, not just the *change in value*. *Id*.; FAC ¶¶ 17-18, 20, 44, 64.

Since Plaintiffs are charged with knowing the contents of Agreements they signed, they cannot establish reasonable reliance on Unison's purported misrepresentations. *U.S. v. Toscano*, 799 F.Supp.2d 230, 246 (E.D.N.Y. 2011) (finding no fraudulent inducement where plaintiff did not read the signed document); *Martino v. Kaschak*, 617 N.Y.S.2d 529 (1994) ("A party is under an obligation to read a document before [it] signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents."). Regardless, the evidence shows the real reason Plaintiffs entered into the Agreements is because Unison's product has no monthly payments, which entirely refutes Plaintiffs' allegation that had they known they were granting Unison an option to purchase an interest in the Property they would not have entered the Agreements. SMF ¶ 1 (citing Ex. AA, Yisroel Dep. Tr. 27:24-25 ("...what drew me to this was no monthly payments.")). Thus, Plaintiffs cannot establish reasonable reliance.

**G. Plaintiffs Cannot Prove a Pecuniary Loss**

Plaintiffs must establish damages to prevail on their fraud claims, which they cannot do. Since receiving the Investment Payment, Plaintiffs made no monetary payments to Unison nor are they obligated to. SMF ¶¶ 39-40 (citing Ex. AA, Yisroel Dep. Tr. 133:15-134:9 (Q. "Have you made any interest payments?" A. "No interest payments, no. I have not….To date, I have not made any payments.")); ECF No. 54 (Memorandum & Order), p. 16 ("Based on Plaintiffs' recitation of the facts, they have not incurred money damages thus far; indeed, they may never incur such damages if Unison decides not to exercise the purchase option per the Agreements.").

Additionally, Unison has not exercised the Option, thus, any harm stemming from the future, possible exercise is remote, speculative and insufficient to establish fraud. SMF ¶ 37; Plaintiffs' 56.1 Counterstatement ¶ 37; *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (affirming summary judgment where only pecuniary loss was "too remote" and speculative); *see Mktg. & Mgmt. Info., Inc. v. U.S.*, 62 Fed. Cl. 126, 130 (2004) (rejecting damages theory based on an unexercised option as "inherently speculative").[16]

Even if Plaintiffs could establish a pecuniary loss, which they cannot, they still cannot present evidence showing such a loss was the direct, immediate, and proximate result of Unison's actions, as they must. *Kregos*, 3 F.3d at 665 (affirming summary judgment where the plaintiff failed to establish that the misrepresentations had caused plaintiff a direct and proximate injury). Here, any harm Plaintiffs may have incurred, which the evidence shows they did not, was of their own making as they admittedly signed the Agreements with full knowledge that they were granting Unison an option to share in a percentage interest in the Property's change in value. SMF ¶ 25 (citing Ex. AA, Yisroel Dep. Tr. 74:6-22 (Q: "What was your understanding of how [Unison] would benefit in the home?" A: "Their benefit…would be that if the [value of the Property] goes up at the time of the sale or 30 years, then they would take a percentage of that."), 85:6-12 (admitting at option settlement Plaintiffs would owe Unison "a percentage of what the house went up. Some sort of calculation of what it went up."). Thus, the evidence demonstrates Plaintiffs—not Unison—caused the conduct to which they are now complaining. For these reasons, there can be no dispute that Plaintiffs cannot present the necessary evidence to establish their fraud claims. Defendants are therefore entitled to judgment on all of Plaintiffs' fraud claims.

[16] *See also E. Coast Res., LLC v. Town of Hempstead*, 707 F.Supp.2d 401, 410 (E.D.N.Y. 2010) ("as a matter of law, damages for unexercised option years are unrecoverable") (*citing Hi-Shear Tech. Corp. v. U.S.*, 356 F.3d 1372, 1380 (Fed. Cir. 2004)).

## II. PLAINTIFFS CANNOT PROVE RESCISSION

Plaintiffs seek rescission due to alleged fraudulent inducement. FAC ¶¶ 67, 136-40; ECF No. 54, p. 20. Rescission is an "extraordinary remedy." *Nolan v. Sam Fox Publ'g*, 499 F.2d 1394, 1397 (2d Cir. 1974) (affirming judgment where no fraud existed). Rescission based on fraud requires Plaintiffs to establish all fraud elements, which as set forth above, they cannot. *Druck v. Macro Fund*, 290 F.App'x 441, 445 (2d Cir. 2008) ("The elements of a claim for rescission based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party.") (citations omitted); see supra. Even then, Plaintiffs cannot establish that they lack an adequate remedy, given monetary values are used to settle the Option. SMF ¶¶ 22, 33-34. *Sky Coverage Inc. v. Alwex Inc.*, 144 N.Y.S.3d 342, 343 (2021) (modifying order on summary judgment on rescission claim where harm was economic and money damages were an adequate remedy, resulting in a dismissal of rescission claim). In any event, since 2018, Plaintiffs received quarterly statements which detailed Unison's potential share in the Property's appreciation—the crux of the alleged fraud—yet Plaintiffs retained the $115,000 payment since that time. SMF ¶ 41.[17] Thus, even if Plaintiffs could establish rescission based on fraud, which again they cannot, they ratified the Agreements by retaining the benefits to the Agreements. *John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Family Life Ins. Tr.*, 783 F.App'x 89, 90 (2d Cir. 2019) (affirming summary judgment where receipt of correspondences and notices supported a finding of implied ratification of the contract); *see Fontanez v. Sanchez*, 2021 U.S. App. LEXIS 23967, at *6 (2d Cir. 2021) (affirming judgment where plaintiff obtained one-time $200 benefit while also seeking to avoid the

[17] While the Court previously acknowledged that the "repeated affirmance of a contract might prevent rescission of said contract thereafter," and that at the pleading stage, Plaintiffs plausible alleged that such affirmance did not occur, the undisputed facts prove otherwise. ECF No. 54, pp. 21-22.

contract).[18] Defendants are accordingly also entitled to judgment as to Plaintiffs' claim to rescind the Agreements based on alleged fraud.

## III. PLAINTIFFS CANNOT PROVE QUIET TITLE

Quiet title is only available if there is a "removable cloud on the property…that is actually invalid or inoperative." *Pravda v. Gleeson*, 200 N.Y.S.3d 791, 793 (2023). Plaintiffs must show they hold title and Defendants' "title claim is without merit." *Ortiz v. Eldert 294, LLC*, 204 N.Y.S.3d 229 (2024) (noting a defendant met its burden by evidencing the parties' duly executed title documents); *Milton v. Kings Park 148 LLC*, 2019 N.Y. Misc. LEXIS 34499 (2019) (granting summary judgment in favor of a defendant where documents demonstrated valid rights). Here, Unison, and Odin New Horizon as the assignee of the Mortgage,[19] hold an unexercised contractual option right but do not hold title to the Property. SMF ¶¶ 22, 37.[20] *See* N.Y. Real Prop. Law § 294(7) (indicating title is not conveyed until an option is exercised); *see IPE Asset Mgmt. v. Fairview Block & Supply Corp.*, 999 N.Y.S.2d 465, 466 (2014) (stating the rule that an option holds an offer open and confers upon the optionee the right to purchase at a later date); *Kaplan v. Lippman*, 75 N.Y.2d 320, 325 (1990) ("the optionee is not bound until the option is actually exercised."); *see Mucci v. Munsey Park Assocs.*, 647 N.Y.S.2d 247, 248 (1996) (affirming judgment in favor of a defendant where the evidence demonstrated the option had not been

[18] *Cf. Reid v. IBM*, 1997 U.S. Dist. LEXIS 8905, at *33 (S.D.N.Y. 1997) (granting summary judgment dismissing claim where party never returned a one-time $28,000 payment thus ratifying the contract); *see Huntington Vill. Dental v. Rathbauer*, 3 N.Y.S.3d 285, 285 (2014) (denying summary judgment when plaintiff operated in accordance with the contract for 2 years, militating against finding that recission remains available).

[19] REX is not a party to the Agreements nor does REX hold any interest in the Agreements. SMF ¶ 23. This fact is also undisputed. Plaintiffs' 56.1 Counterstatement ¶ 23. Thus, Plaintiffs cannot prove quiet title against REX.

[20] The Court held an alleged "potential cloud[s] on title" is sufficient at the pleading stage. ECF No. 54, p. 18 (*citing Marchand v. N.Y.S. Dept. of Env't Conservation*, 51 A.D.3d 795, 858 (2008)). However, in *Marchand*, the parties were in an actual dispute over ownership rights of a private street and the defendant, on summary judgment, proffered evidence of its property right via easements, utility rights, and public use. *Marchand*, 2009 NY Slip Op 33292(U), ¶¶ 5-9. No similar facts exist here as the Court correctly noted Defendants may "decide[] not to exercise the purchase option per the agreements." ECF No. 54, p. 16.

exercised nor had the defendant acquired title to the property as a result). Still, even if the Option, Mortgage, or Memorandum constitute a "cloud" on title, no evidence establishes the Agreements, are invalid. This is particularly true considering Plaintiffs voluntarily entered into the Agreements, which contained secured obligations and granted Unison an option to purchase an interest in the Property in the future. SMF ¶ 22; *Novakovic v. Wells Fargo Bank, N.A.*, 2024 N.Y. App. Div. LEXIS 2852, at *6 (2024) (granting summary judgment in favor of defendant after the defendant established the plaintiff signed the agreements in question); *Milton*, 2019 N.Y. Misc. LEXIS 34499. For these reasons, Plaintiffs cannot establish a triable issue of material fact on their claims for quiet title. The Court should accordingly grant summary judgment in Defendants' favor.

**CONCLUSION**

Defendants therefore seek summary judgment on Plaintiffs' remaining claims and respectfully request the Court grant Defendants' motion for summary judgment in its entirety, or alternatively, partial summary judgment.

Dated: October 31, 2024

**SCALE LLP**

By:/s/ Alexander J. Gershen
Alexander J. Gershen [admitted pro hac vice]
Scale LLP
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 735-5933
agershen@scalefirm.com

Attorney for Defendants Unison Agreement Corp., Real Estate Equity Exchange, Inc., and Odin New Horizon Real Estate Fund L.P.